THE CHICAGO TITLE AND TRUST COMPANY, Receiver of CHARLES P. KELLOGG & COMPANY, Appellant, v. JAY J. SMYTH.

**Reformation:** CONSTRUCTION. On March 31 defendant offered five thousand three hundred dollars for a stock; on April 5 he offered five thousand dollars, *because of intervening sales.* On the last-named day a bill of sale was made, giving defendant the stock and net proceeds of sales "from and after April 1" for five thousand dollars. Defendant offered a special verbal agreement that the quoted words should cover sales *on* April 1. This was disputed. There was no evidence of mutual mistake. *Held,* it was error to reform the bill of sale to include sales made *on* April 1. "From and after" a day excludes that day.

*Appeal from Lucas District Court.*—HON. W. D. TISDALE, Judge.

SATURDAY, APRIL 6, 1895.

Action to recover one hundred and forty-nine dollars and eleven cents, with interest from April

5, 1893, alleged to be due as a balance on a con-
tract for the sale of a stock of merchandise. Defend-
ant denies that he is indebted to plaintiff. The facts
and the issues will sufficiently appear in the opinion.
The parties proceeded to the trial of this case before
a jury, and after plaintiff had introduced its evidence
in chief the defendant was called as a witness in his
own behalf, and was proceeding to state a verbal con-
tract between him and the plaintiff. Plaintiff objected,
as being in conflict with the written contract, which
objection was sustained. Thereupon defendant
amended his answer, alleging that the said written
contract "did not embody the intention of the parties,
and did not mean that the said contract should exclude
the sales of the Creston store for the first day of April,
1893." He asked the court to reform said contract, "in
order that the same may express the intention of the
parties when the same was made." Thereupon the
cause was transferred to, and tried as in, equity, with-
out objection; and the court made certain findings of
fact and of law, and entered decree reforming the con-
tract as prayed, and entering judgment thereon dis-
missing the plaintiff's petition, and for costs. Plaintiff
appeals.—*Reversed.*

*Stuart & Bartholomew* for appellant.

*Will B. Barger* for appellee.

Given, C. J.—I. For convenience, we will refer to
Charles P. Kellogg & Co. as the plaintiff. Plaintiff,
doing business in Chicago, was the owner of a stock of
goods in a store and on sale in Creston, Iowa, in charge
of one E. R. Jones. Plaintiff, desiring to sell said stock,
sent one T. C. Ketcham to see the defendant, at Char-
iton, with the view of selling the goods to him. On the

thirty-first day of March, 1893, they two went to Creston. Defendant examined the stock, and offered five thousand three hundred dollars for it, which offer was refused, and the negotiations ended. On April fifth, following, defendant went to plaintiff's store in Chicago, where negotiations were resumed, and an agreement arrived at. Thereupon, plaintiff, by its president, executed and delivered to the defendant a bill of sale reciting that "in consideration of five thousand dollars, to be paid according to contract," it sold and assigned to defendant all the stock of merchandise in its store at Creston, excepting certain articles enumerated. Following this, the writing says: "In addition thereto, said Jay J. Smyth is to have the receipts from all sales from and after April 1st, 1893, less the expense of operating the business from that date." Plaintiff at the same time delivered to defendant an unsealed letter to Mr. Jones, as follows: "We have just wired you as follows: Smyth has bought stock. Sales and expenses since Saturday first go with it. Make Mr. Smyth an exact statement of the sales from Saturday. Expense includes rent to April 15th, and all salaries from Saturday." This bill of sale and letter the defendant read at the time they were delivered to him. Defendant returned to Creston, and presented this bill of sale and letter of instructions to Mr. Jones, who thereupon turned over the stock of merchandise to him, and gave him a written statement of the sales and expense to that date, including April 1, 1893. The sales for the first day of April amounted to one hundred and fifty-five dollars and eighty-one cents, and the expenses to six dollars and seventy cents, leaving one hundred and forty-nine dollars and eleven cents as the net proceeds of the day.

II.   This controversy is simply as to which party is entitled to the net proceeds of the sales made on April

1, 1893. The plaintiff executed and delivered, and the defendant received, the bill of sale as the contract on that subject. It says that the defendant "is to have the receipts from all sales from and after April 1st, 1893," less expenses. This the defendant says, in his amendment to his answer, "did not embody the intention of the parties, and did not mean that the said contract should exclude the sales of the Creston store for the first day of April, 1893," and asks that the contract be reformed, "that the same may express the intention of the parties." He does not allege either fraud, accident, or mistake in writing the contract as it is, but simply that it does not express the intention of the parties. Accepting this as a sufficient allegation of mutual mistake, we inquire whether defendant is entitled to have the contract reformed so as to read "on," instead of "from and after," April 1, 1893. There is neither allegation, nor proof of fraud or accident; hence we inquire only as to mistake. Both parties knew that the words "from and after April 1st, 1893," were written in the contract. Defendant testifies: "I opened it up, and looked it over, and I thought it was all right. I looked over the agreement, and thought it was all right." Further on he says: "I looked it over, and they looked it over carefully. I didn't put much strength to it. I stuck it in my pocket, and I thought it was all right." Neither party then intended that any different words should be used. The contention is not that different words were intended to be used, but as to the construction to be placed upon those used. To reform a writing on the ground of mistake, it must appear that the mistake was mutual. *Wachendorf v. Lancaster*, 61 Iowa, 509. Concede that there was a mistake, so far as defendant was concerned; it was not mutual, for the instrument was unquestionably written just as plaintiff intended it should be. To authorize the reformation of

a written instrument on the ground of mistake, "the evidence must be clear, satisfactory, and free from reasonable doubt. *Wachendorf v. Lancaster, supra.* Defendant testifies that the agreement arrived at, and which was to have been embodied in the writing, was that he was to have the goods for five thousand dollars, as they were when he last saw them, namely, on the evening of March 31st, and the proceeds of all sales made after the close of business on the thirty-first, less expenses. In this the defendant stands alone, and is contradicted by several witnesses on behalf of defendant, having equal knowledge, and by at least one undisputed circumstance. On the thirty-first he offered five thousand three hundred dollars for the goods, and on the fifth but five thousand dollars, giving as a reason that the stock had been reduced by sales. If he was not to have the sales of April 1st, there was force in the reason; otherwise there was none. We have examined this evidence with care, and are of the opinion that it fails to establish defendant's contention by even a fair preponderance, much less with that degree of certainty that authorizes the reformation of written instruments. See *Tufts v. Larned,* 27 Iowa, 330; *Gelpcke v. Blake,* 15 Iowa, 387; *Jack v. Waber,* Id. 450; *Hervey v. Savery,* 48 Iowa, 313; *Clute v. Frasier,* 58 Iowa, 268; *McTucker v. Taggart,* 29 Iowa, 478; *Strayer v. Stone,* 47 Iowa, 333; and *Wachendorf v. Lancaster, supra.* .

III. We next inquire as to the proper construction to be given to the words "from and after April 1, 1893," as written in this contract. "A contract is to be understood according to the meaning of the language employed therein, and not according to the views of its meaning entertained by the parties drawing it; and a court will not change plain language of the contract

in order to conform it to a mistaken notion of its meaning, entertained by the person executing it, in the absence of proof of fraud, accident, or mistake." *Wadsworth v. Smith*, 43 Iowa, 439. The learned district judge, after noting that the courts have differed in their construction of the words "from and after," correctly states the rule to be as sustained by the weight of authority, "that if it is from an act done it is inclusive, but if from a day it is exclusive." This statement of the rule is based upon reason as well as authority. If it is from an act done, the time commences immediately upon the act being done. We have a familiar illustration in legislative enactments which are to take effect from and after their passage, or from and after publication. In the case of *Arnold v. U. S.*, 13 Sup. Ct. Rep. 403, the question was whether the additional duties imposed by an act passed and which took effect on July 1, 1812, were chargeable upon the cargo of a ship that came within the jurisdiction of the United States, and within one of its collection districts, on the first day of July, 1812. The court says, "The statute was to take effect from its passage, and it is a general rule that, where the computation is to be made from an act done, the day on which the act is done is to be included." It was held that the goods were subject to the additional duty. In *Arrowsmith v. Hamering*, 39 Ohio St. 573, a petition in error was filed on April 18, 1883, without leave of court. On that day an act was passed, and took effect, amending the statute so as to require leave to be first granted. It was held that by presumption of law the act took effect from the commencement of that day, but that such presumption would not prevail where it is in conflict with any right acquired in actual point of time, or on that day before that act took effect, and that in such case the exact time in the day may be shown; that in the absence of

proof that the case was pending on that day, before the act was passed and took effect, the presumption of law will prevail that the act took effect from the commencement of the day. Mr. Bishop, in his work on Contracts (section 1343), states the rule thus: "Where time is computed from an act done, the general rule is to include the day. Where it is computed from the day of the act done, the day is excluded." He adds: "But it is believed that not all courts will, and none should, adhere to this or any other like technical distinction, in a case where, by disregarding it, they can better carry into effect what, all the considerations being taken into account, it is reasonably plain the parties meant." In support of this latter statement a number of cases are cited. In *Wilcox v. Wood,* 9 Wend. 345, it was held that a lease from the first day of May in one year to the first day of May in the succeeding year excluded the first day. Our statement of the rule is in harmony with paragraph 23 of section 45 of the Code, prescribing rules to be observed in the construction of statutes. It is there provided that in computing time the first day shall be excluded, and the last included, unless the last falls on Sunday. Applying this rule to the language under consideration, we must say that the words "from and after April 1, 1893," exclude that date. We accept, as founded in reason and justice, that other rule stated by Mr. Bishop as quoted above, and inquire whether, "all the considerations being taken into the account," it is reasonably plain that the parties meant otherwise. From our examination of the evidence, as already stated, we think it fairly appears that the parties intended, not only to use the language that they did, but to use it in the sense of excluding the first day of April. Defendant is not only unsupported in his claim as to the verbal contract, but, as we have said, is directly contradicted by several witnesses and by the

circumstances. Our conclusion is that the decree and judgment of the district court must be reversed, and that judgment be entered in favor of the plaintiff for the amount claimed, with costs.—*Reversed.*