EDWARD BURNER, Appellant, v. HIGMAN & SKINNER CO.,
J. K. PRUGH, PELLITIER DRY GOODS CO., J. P. MARTIN,
and T. S. MARTIN, Appellees.

**Negligence:** FREIGHT ELEVATORS: INJURY TO THIRD PERSONS: LIA-
1  BILITY OF SUBTENANT. Subtenants occupying only a portion of
a building are not liable to the customers or employés of
the tenants who enter the premises without their invitation,
for injuries resulting from the negligent failure to properly
guard an elevator shaft, where such subtenants had no lease-
hold right to use the elevator, or, having the right to use it in
common, were under no obligation to repair or maintain the
same.

**Elevator accident:** LIABILITY OF TENANTS: EVIDENCE. A tenant who
2  sublets a portion of the premises to another for the purpose
of storing goods, impliedly invites his subtenant or his em-
ployés to enter upon the premises, and is liable for an injury
caused by a negligent failure to properly guard an elevator
shaft used in storing and removing such goods. Evidence
held sufficient to take the case to the jury on the question of
the tenant's negligence.

**Liability of owner of premises:** EVIDENCE. Where the owner of a
3  building containing a freight elevator for the common use of
the tenants does not by the terms of the lease part with his
control of the elevator except the right to use the same, he may
be liable with a tenant for injuries to a licensee of the tenant
resulting from negligent construction and maintenance of the
elevator, without proper gates or guards, in such a place that
it could not be readily seen, and knowing that persons must
frequent the place and use the elevator to make the premises
available to the tenant. Evidence held sufficient to take the
case to the jury on the question of the owner's liability.

*Appeal from Woodbury District Court.*— HON. F. R. GAY-
NOR, Judge.

FRIDAY, JUNE 9, 1905.

ACTION at law to recover damages for injuries received
by plaintiff in falling into an elevator well of a building

owned by defendants James P. & T. S. Martin. The other defendants were tenants of the Martin's, and they are sought to be held liable as joint *tort feasors*. At the conclusion of plaintiff's evidence, the trial court directed a verdict for the defendants, and plaintiff appeals.— *Affirmed* in part, and *reversed* in part.

*F. E. Gill,* for appellant.

*J. S. Lawrence,* for appellee Prugh.

*Marks & Mould,* for appellee Pellitier Dry Goods Co.

*W. G. Sears,* for appellees Martin.

*Shull & Farnsworth,* for appellee Higman & Skinner Co.

Deemer, J.— Defendants James P. & T. S. Martin were the owners of a large building in the city of Sioux City, having four stories and a high basement. This building was erected in the year 1889, and was acquired by the Martins in the year 1901. At the time of their purchase defendant Prugh was in possession as lessee of the basement and first story of the building, which he used for a crockery store. The defendant Higman & Skinner Company were at that time in possession of the three upper stories as lessees, and they used the same for mercantile purposes. The Martins purchased subject to these leases. After acquiring title to the property, new leases were entered into between the Martins and defendants Prugh and the Higman & Skinner Company, covering the same floors which they had theretofore occupied. In each lease it was provided that the lessee should " have the right in common with other tenants of said building, to the use of the freight elevator in said building." There was also a covenant in each binding the lessee to keep the building, etc., in as good repair as it then was " or might at any time be placed in by the lessor," but the lessor made no covenant to repair. Thereafter the Higman & Skinner

Company, with the consent of the Martins, sublet the fourth floor of the building to the Pellitier Dry Goods Company for storage purposes only. This lease is not in evidence, and there is no showing that the dry goods company ever had any right to or control over the elevator well where plaintiff received his injuries. True, there is evidence that they used the elevator in common with the other tenants, but there is no testimony that they had any right thereto, except by sufferance. The building, as we have said, was a large one — covering all but twelve feet of the east end of a lot fifty by one hundred and fifty feet, extending east and west, and fronting on what is known as " Nebraska Street," in the city of Sioux City. At the rear of the building, and covering the twelve feet of the lot hitherto mentioned, there is a covered platform or shed extending to an alley in the rear of the building. This platform was inclosed; three sides thereof having been constructed by one of the tenants with lumber sash and doors belonging to him, and which he had the right to remove. The entrance to the building was at the west end, on Nebraska street. At the rear or east end of the building there was the freight elevator mentioned in the leases, which was propelled by a water motor in the basement. The east wall of the building was the east wall of the elevator well. The other sides of this well, which were about eight or ten feet in width, were made of frame partitions, in which there were doors on the different floors. Through the east wall of the building, which constituted a part of the elevator well, and on a level with the outside platform, there was an opening into the elevator shaft, made for the purpose of getting goods from the covered platform upon and onto the elevator. To this opening there was a door, with rollers attached to the top, which ran on a horizontal track over and beyond the opening. This door, when closed, protected the elevator shaft and well; and, when open, left it in an exposed condition. On the outside of this sliding door there was printed in large letters, " Keep the Door Closed." But when

the door was open this sign was not in sight. After the defendant Prugh obtained his second lease of the building, he put up a bar on the inside of the east door, which was hung on a pivot at one end in such a manner as that it could be lowered across this east entrance to the elevator, and retained in a horizontal position some three feet from the doorsill leading into the elevator. This bar could be easily raised and lowered. The distance from the top of the first floor to the bottom of the elevator well is something like fifteen feet.

On the morning of December 2, 1902, plaintiff, an employé of an independent dray line in Sioux City, was requested by the owner of some goods which were kept in storage for hire by the defendant Higman & Skinner Company to go to the building in question and remove the goods. An employé of the owner of the goods — a man by the name of Lockhart — accompanied him. They drove into the alley at the rear of the building, and backed the team up to the shed door, preparatory to loading the goods onto the wagon. Lockhart then started to go into the building. The east door to the elevator shaft was open, and the bar had been raised. The shed was dark, as it always was in the early morning and on dark days, and the door to the elevator was pushed back, so that the sign thereon was not visible. Lockhart entered through this door, and immediately fell into the elevator well. Plaintiff, who was following but a short distance behind, but who did not know of the accident which had befallen his companion, also passed through the open door, into the elevator well, fell to the bottom of the shaft, and received the injuries of which he complains. He had never been in the building before, and did not know of its arrangement.

The negligence charged is the faulty construction of the elevator, failure to protect or guard the shaft, insufficient light in the covered shed or platform to warn persons who might lawfully enter the east door into the elevator of present

dangers, and failure to provide automatic gates or to post some one to warn persons properly upon the premises of attendant dangers.

As to defendants Prugh and the Pellitier Dry Goods Company there is manifestly no ground for recovery, no matter how the case stands as to the other defendants.

1. NEGLIGENCE: freight elevators; injury to third persons; liability of subtenants.

Neither of these parties was under any obligation, so far as plaintiff was concerned, to repair or keep the elevator in a safe condition. The Pellitier Company was simply a sublessee of one floor of the building, without any express contract right as to the use of the elevator. The right to do so may have passed as an appurtenance to their lease, but they were under no obligation to repair, remodel, or guard the said elevator for plaintiff's protection. They took this easement as they found it, and were not obliged to repair it for the use of other tenants or their customers or licensees. Prugh held a lease of the first story and basement, but he was under no covenant to repair. By the terms of his lease, he had a right in common with the other tenants to use the elevator in its then condition, but was not required to make it safe for persons who were strangers to him, and to whom he had extended no invitation to enter the premises. Negligence is bottomed upon some duty which the party charged therewith owes to the one who is injured. That is to say, neither the owner nor the occupant of property is bound to keep it in such condition as that no one may be injured thereby. Liability is predicated only on failure upon the part of the party charged to perform some duty which he owes to the one who is injured. If one, therefore, goes upon premises without invitation, express or implied, the owner or occupant thereof is under no duty to look out for his safety; and, if he be injured while there without lawful right or as a bare licensee, no recovery can be had. Thompson on Negligence, sections 946, 1075. Neither Prugh nor the Pellitier Company extended any invitation to the plain-

tiff to enter the premises. As to them he was, at most, a bare licensee, and from them there can be no recovery.

II. As to the landlords, the Martins, and the Higman & Skinner Company, we have a different proposition. Plaintiff was impliedly invited by the defendant the Higman & Skinner Company to enter the premises. They undertook to store goods for plaintiff's employer, and manifestly invited this employer or

2. Elevator accident: liability of tenants; evidence.

his representative to come upon the premises to get the goods. The case as to this tenant depends upon the nature of the duty it owed plaintiff. Presumptively the one who occupies premises is liable to one who is negligently injured while rightfully thereon. In some cases the landlord may also be liable, either individually or jointly with his tenant. The reason for the rule is that the tenant, and not the landlord, was, at common law, in the absence of covenant, bound to keep the premises in repair, in so far as strangers to the lease were concerned. There is also a social duty resting upon one who occupies premises to keep them in a reasonably safe condition for those whom he invites to come thereon. The landlord, as a general rule, however, has violated no duty which he owes to third persons, having exonerated himself when he lawfully committed the premises to the care of a tenant. To this general rule of nonliability on the part of the landlord there are exceptions — for instance, where the landlord retains control over the premises, or the part thereof where the injury occurred, as a passageway or elevator. This exception also applies when the landlord is in joint control of the property with his tenant. Another exception exists where there is a defect in the premises leased, existing at the time of the demise, that constitutes a nuisance which it is the duty of the landlord to abate. In such cases both the landlord and the tenant are liable — the former as author and the latter as continuor of the nuisance. Of course, the landlord is not liable for nuisances created during the term covered by the

lease, unless he in some manner actively contributes to the creation thereof. There are some other exceptions, which need not be noted at this time, as they are not involved in this controversy.

With these rules and exceptions as to liability settled, we now go to the question as to whether or not there is any testimony which should have taken the case to the jury on the question of the negligence of either or of both of these defendants. The location and construction of the elevator shaft have already been sufficiently described. But it should further be stated that there was testimony tending to show that in the morning and evening, and on dark days, the covered shed or platform to the east of the building so obscured the light that one entering the shed and approaching the elevator could not see the shaft or well when the elevator proper was above the first floor. There were no artificial lights near the elevator, nor were there any gates or bars, save the one bar already described. Nearly all freight elevators in Sioux City were supplied with automatic or semiautomatic gates, and the testimony tended to show that this is the usual and proper method of construction. The tenants had a common right to use this elevator; and it was frequently used by them and their employés, as well as by numerous draymen, who went there many times daily to get goods which were stored in the building. While it was not a passenger elevator, yet, as the upper floors were used largely for storage, it was known by the lessee, and by the lessor as well, that many people would come to the rear of the building, and use the elevator for the purpose of getting these goods. It was as much the duty of one tenant as the other to see that this elevator was properly protected, and to those whom they invited to come upon the premises they owed an affirmative duty. So, too, it was as much the duty of one tenant as the other to see that the elevator door out onto the rear platform was kept closed, and the bar placed across the opening. It seems, however, that no one, in fact, performed this duty,

or looked after the proper equipment of the elevator, because of a dispute between the landlord and his tenants as to whose duty it was to properly guard the shaft and look after the elevator and its appliances. By the terms of the leases, the lessees simply had the right in common to the use of the freight elevator. The landlord did not part with his control thereof, so far as shown, as he granted nothing but the right to the use thereof. One tenant had as much right as another to the use thereof, and there was no joint liability on the part of the tenants.

When plaintiff and his companion went to the building at the time they fell into the shaft they found the door open, and the elevator raised above the first floor. Lockhart had been there the day before, and had found the elevator in the same condition. He had used it, and, when he left, did not close the door or lower the bar. He did not see the door, as it had been pushed back into a partition which obscured it from sight. He did not see the bar, and consequently did not lower it. He had gone there the day before on business connected with the Higman & Skinner Company, and was justified, we think, in leaving the elevator as he found it. It was as much the duty of the Higman & Skinner Company, as of any other tenant, to see that this outside elevator door was closed, and the bar put in place. Either this was not done, or some one of the tenants had early in the morning opened the door, raised the bar, and used the elevator proper above the first floor, where it had been left by Lockhart the evening before. There was also testimony tending to show that this outside door was generally opened in the morning, and left open until noon, when it was closed for a short time, then opened again, and left open until closing time in the evening. This custom had existed for more than a year prior to the time plaintiff received his injuries. The building had not been closed on the evening of the day previous to the one on which plaintiff was injured, and Lockhart had left the elevator at the first floor when he finished his work there.

Such being the record, we think there was enough evidence to take the case to a jury on the question of the negligence of the defendant Higman & Skinner Company, and that the trial court was in error in directing a verdict in their favor.

As to the landlord, James P. & T. S. Martin, there is no liability, unless it be shown that the premises as leased by them were in such a dangerous and unsafe condition as to constitute a nuisance, or that they reserved such control over the premises as that it was their duty to see that the same were kept in a reasonably safe condition for the uses intended. It will be observed that the accident did not happen by reason of any use of the elevator proper. The negligence charged is primarily the location and construction of the elevator well or shaft, without guards or gates, in such a place as that it could not be seen, knowing that persons must frequent the place and use the elevator in order to make the premises available to the lessees. The evidence, we think, shows such retention of control over the elevator by the landlord as that he was charged with the duty of keeping it in such condition — a reasonably safe condition — as to protect persons rightfully upon the premises from injury. The elevator was not leased outright to any of the tenants. They simply had the right to use it in common. This, as we think, shows that there was such reservation of control on the part of the landlords as that they owed a duty to any one who might rightfully be in proximity thereto. As this was a freight elevator, they were not bound to the highest degree of care, but were required to use ordinary and reasonable care in protecting and lighting this elevator well or shaft, so that persons rightfully upon the premises might not be injured thereby. Had they retained no control over the elevator, there would have been no liability, in the absence of a showing that at the time they leased the premises there was a nuisance, of which they had knowledge, and which it was their duty to abate. But

3. Liability of owner of premises: evidence.

as landlords they had the right to lease their premises in their then condition, and there was no covenant, either express or implied, to repair, or to keep the premises free from danger, except to the public in general. They could not, of course, by leasing the premises, absolve themselves from any duty they owed to the public; but, as to private individuals who came upon the property by invitation of the tenants, they were under no duty, save as they retained control over the elevator shaft or well. These propositions are well stated in *Brady v. Klein,* (Mich.) 95 N. W. 557, (62 L. R. A. 909); *Fellows v. Gilhuber,* 82 Wis. 639 (52 N. W. 307, 17 L. R. A. 577); *Freeman v. Hunnewell,* 163 Mass. 201 (39 N. E. 1012); *Hanson v. Beckwith,* 20 R. I. 165 (37 Atl. 702, 38 L. R. A. 716, 78 Am. St. Rep. 847); *Harpel v. Fall,* 63 Minn. 520 (65 N. W. 913); *Burdick v. Cheadle,* 26 Ohio St. 393 (20 Am. Rep. 767); *Willson v. Treadwell,* 81 Cal. 58 (22 Pac. 304); *Tex. R. R. v. Mangum,* 68 Tex. 342 (4 S. W. 617).

The cases are not harmonious on these propositions, but, in most of those holding to a contrary view, the premises were devoted to a public or semipublic purpose, of which the lessor had notice, and were not put to merely private uses, as was the building in this case. Most of the authorities may be harmonized when this distinction is kept in mind. If the premises are devoted to public or semipublic purposes, or if there be a duty owing to the public in general, the landlord cannot absolve himself from liability by leasing them to a tenant, for he is under an affirmative duty, which he cannot so delegate to another as that failure of that other to repair makes him, and him alone, responsible for the injury. In the condition they were in when leased, the premises in the present case were manifestly not a public nuisance. They were not even a private nuisance as to the tenants, for they took them as they found them, and did not exact from their landlord a covenant to repair. They only became a private nuisance as to those who were invited upon the premises, and

the lessees' customers were not invited by the landlord.   The premises were not public or semipublic in character.   Hence there is no liability on the part of the landlords in this case unless they retained some control over the property, and were under obligation to keep it reasonably safe for those who might have business there.   Having leased the different floors to separate firms or individuals, and given each the right to use the elevator in common with the others, we think there was enough evidence to take the case to the jury on the question of mixed possession of the tenants; the Higman & Skinner Company, and the landlords, and of the duties of each in the premises.   The elevator was for the common use of all of the tenants.   None of them had exclusive control thereof. In such cases it is generally held that a landlord is liable with the particular tenant extending the invitation, on the theory that it is the duty of the landlord to keep the property so used in a reasonably safe condition.   *Looney v. McLean,* 129 Mass. 33 (37 Am. Rep. 295); *Harrinson v. Jelley,* 175 Mass. 292 (56 N. E. 283); *Milford v. Holbrook,* 9 Allen, 17 (85 Am. Dec. 735); *Elliott v. Pray,* 10 Allen, 378 (87 Am. Dec. 653); *Peil v. Reinhart,* 127 N. Y. 381 (27 N. E. 1077, 12 L. R. A. 843); *Wilcox v. Zane,* 167 Mass. 302 (45 N. E. 923); *Dollard v. Roberts,* 130 N. Y. 269 (29 N. E. 104, 14 L. R. A. 238); *Gordon v. Cummings,* 152 Mass. 513 (25 N. E. 979, 9 L. R. A. 640, 23 Am. St. Rep. 846); *Sawyer v. McGillicudy,* 81 Me. 318 (17 Atl. 124, 3 L. R. A. 458, 10 Am. St. Rep. 260); *Donahue v. Kendall,* 50 N. Y. Super. Ct. 386; *La Plante v. La Zear,* 31 Ind. App. 433 (68 N. E. 312); *Ellis v. Waldron,* 19 R. I. 369 (33 Atl. 869).   The Sawyer Case, *supra,* is exactly in point.   It holds that in such a case as this there is an implied covenant on the part of the landlord to keep the property in repair. This, it seems to us, is the correct doctrine, both on principle and authority.

Upon the two propositions we have discussed, regarding the liability of a landlord for such injuries as plaintiff in this

case received, there is, as has been noticed, a decided conflict of authority. We have not heretofore had occasion to pass upon the matter, and are free to determine it according to what seems to be the better doctrine. The cases we have cited are bottomed on well-recognized principles of jurisprudence, and we are constrained to approve them as furnishing the rule for this State.

It follows that the trial court was in error in dismissing the case as to the Higman & Skinner Company and as to James P. & T. S. Martin.— *Affirmed* in part and *reversed* in part.