CRAIG RONALD FETTERS, by GARY FETTERS, individually and as next friend, appellants, v. CITY OF DES MOINES, appellee.

No. 52327.

(Reported in 149 N.W.2d 815)

April 4, 1967.

Wilson, Hyland & Brick, by Tom Hyland, of Des Moines, for appellants.

Des Moines City Legal Department, by Leo Gross, Assistant City Attorney, for appellees.

RAWLINGS, J.—By an action at law, plaintiff Gary Fetters, on behalf of his son Craig Ronald Fetters, and himself individually, sought damages from defendant, City of Des Moines.

Trial to a jury resulted in a verdict for each plaintiff.

Defendant's motion for new trial was sustained and plaintiffs appeal. We reverse.

June 9, 1962, the Des Moines Independent School District, lessor, and the City of Des Moines, lessee, entered into a written agreement under which the school district, for brief periods, demised to the City certain recreation areas. In this connection see chapter 377, Code, 1962.

The relevant portion of the lease provides as follows: "IV. FOR THE PERIOD FROM JUNE 11, 1962 to AUGUST 11, 1962, the *Playground areas only* at the following schools:" Seventeen

schools are then designated by name, including Monroe, being the playground with which we are here concerned.

The instrument then states:

"IT IS UNDERSTOOD AND AGREED, that the above described premises:

"A. Are to be used for supervised playground programs under the direction of the Recreation Commission.

"B. That the Park Board may cut the grass, drag, and generally maintain the diamonds and play area, when needed, and also fill in low spots if needed.

"C. That the Park Board may install certain equipment on these areas upon approval by the Department of Buildings and Grounds, Board of Education, after a sketch showing the proposed location has been submitted and approved by the Director of Physical Education and the Recreation Commission.

"D. That the landscaped areas are exempt from this agreement.

"E. That by mutual consent some of these areas may not be used due to weather conditions, construction plans, or other reasons."

At all times here concerned a children's metal merry-go-round affixed to a solid or concrete base, and other recreation equipment was located on the Monroe playground.

About 10 a.m., August 11, 1962, a part-time recreation supervisor, employed by defendant City Park Board Recreation Commission, went to the subject area. Children were playing there. An inventory of lessee's equipment was also then taken, but about 1:15 p.m. it was all removed and this employee left.

Shortly thereafter or about 2 p.m., plaintiff father's four and a half year old son Craig went to the playground. He there entertained himself on the merry-go-round. The center cover plate of the device was missing. As a result the center iron pivot post, which came in contact with the top of the side shield plate whenever the merry-go-round happened to tilt, was exposed.

Craig placed his right index finger in the open area, the merry-go-round tilted, and the finger was badly mangled.

Plaintiff father took the boy to a hospital where the injured member was amputated about one-half inch below the middle phalange.

In ruling on defendant's motion the court stated in relevant part, it was sustained as to instruction 6 and the term and area leased. In that regard see rule 118, R. C. P., and Mooney v. Nagel, 251 Iowa 1052, 1054, 1055, 103 N.W.2d 76.

This instruction was as follows: "You are instructed that on August 11, 1962, the playground at Monroe School located at 30th Street and Hickman Road in the City of Des Moines was owned by the Independent School District and was under lease to the defendant, City of Des Moines, and as applicable to this case, the City of Des Moines would be, as between said City and the Independent School District, considered the owner of the playground as well as the playground equipment located thereon."

Plaintiffs contend this was a correct statement of applicable law, properly given, and the court erred in later holding otherwise.

I. As best we can determine from the order entered, the first question presented is whether the term of the lease agreement from one given day to another is inclusive or exclusive of either or both terminus dates.

The words "from" and "to" when used with respect to measurement of time have no fixed or specific meaning. Standing alone they are ambiguous and equivocal.

On that point we are confronted with construction of the lease agreement. This poses an issue determinable by the court alone. Morris Plan Leasing Co. v. Bingham Feed and Grain Co., 259 Iowa 404, 143 N.W.2d 404, 412; 17A C. J. S., Contracts, section 294, page 23, and section 617, page 1250; 17 Am. Jur.2d, Contracts, sections 240–250, pages 624–643; 51 C. J. S., Landlord and Tenant, section 245, page 870; and 32 Am. Jur., Landlord and Tenant, section 129, page 133.

While authorities appear to be in varying degrees of conflict on the subject, we hold in computing time the word "from" is generally construed exclusive if from a given day or

date where there is nothing in the agreement showing a contrary intention of the parties. Welch v. Welch, 212 Iowa 1245, 1247, 238 N.W. 81; Chicago Title and Trust Co. v. Smyth, 94 Iowa 401, 406, 62 N.W. 792; Teucher & English v. Hiatt, 23 Iowa 527, 529, 92 Am. Dec. 440; Wehran v. Helis, La. App., 152 So.2d 220, 227, 228; Gregory v. Walker, 239 Ark. 415, 389 S.W.2d 892, 894; Pomeranz v. More, 187 Misc. 383, 63 N. Y. S.2d 111, 114; 86 C. J. S., Time, section 13(3), page 851, and section 13(9) (b), page 863; 52 Am. Jur., Time, section 17, page 342, and section 23, page 348.

In addition the word "to" as employed in the subject lease relative to duration or termination date is to us inclusionary. This court said in Henderson v. Edwards, 191 Iowa 871, 875, 876, 183 N.W. 583, 16 A. L. R. 1090: "Ordinarily, the word 'until' is inclusive in its meaning, and will be so construed unless it be shown by the context or otherwise that the contrary is intended."

On the same topic the following pertinent statement is found in 86 C. J. S., Time, section 13(4), pages 854, 855: "* * * such words as 'before,' 'by,' 'to,' 'till,' or 'until' may be used in an inclusive sense, and frequently indicate a coming or passing into a day, as well as the arrival at it, and it has been said that ordinarily and usually they are inclusive in meaning, and will be so construed unless it be shown by the context or otherwise that the contrary is intended. If they are considered to have an inclusive meaning, they will, in accordance with the usual rule of inclusion and exclusion, exclude the first day and include the day or date to which they refer, and this is the method of computation that is generally employed when the words are used with respect to a future day on which something is required to be done, or if the expression is from day to day, or from one day to another. * * *."

See also Darnall v. Day, 240 Iowa 665, 670, 37 N.W.2d 277; Halbert v. Block-Meeks Realty Co., 227 Ark. 246, 297 S.W.2d 924, 925; and 52 Am. Jur., Time, section 25, page 350.

Although directed to the construction of statutes, see Code section 4.1, paragraph 23.

In the case at bar the period of the lease runs from one given day to another and there is nothing in the agreement disclosing the parties intended the occupancy period to include the terminus a quo or to exclude the terminus ad quem. We here hold the first day must be excluded, the last included.

The trial court erred, to the extent found otherwise, in the order granting a new trial.

II. It also appears the trial court concluded the jury had been erroneously advised, by instruction 6, defendant-city was "considered the owner of the playground as well as the playground equipment located thereon".

Plaintiffs and defendant have presented authorities in support of their respective arguments dealing generally with rights and liabilities between landlord and tenant as to fixtures located on leased property. See Walker v. Puck, 236 Iowa 686, 8 N.W.2d 701, and Lamble v. Schreiber, 236 Iowa 597, 19 N.W.2d 669.

However, this is extraneous to the issue at hand. Our problem relates solely to the matter of liability on the part of a lessee to a third party invitee who has been harmed while on demised premises. In this regard defendant does not question the status of the four and a half year old plaintiff as an invitee or that he was incapable of contributory negligence.

As a general rule, subject to express contractual provisions and some fairly well defined exceptions, not here shown to be applicable, a tenant takes the demised premises as he finds them. Stated otherwise, the rule of caveat emptor ordinarily applies as between lessor and lessee. See Barrett v. Stoneburg, 238 Iowa 1068, 1074, 29 N.W.2d 420; Casey v. Valley Savings Bank, 231 Iowa 19, 23–25, 300 N.W. 733; Reinach v. City and County of San Francisco, 164 Cal. App.2d 763, 331 P.2d 1006, 1009; Roan v. Bruckner, 180 Neb. 399, 143 N.W.2d 108, 111; Fleming, The Law of Torts, Second Ed., chapter 19, pages 396–398; Prosser, Law of Torts, Hornbook Series, Third Ed., chapter 11, pages 411–420; 52 C. J. S., Landlord and Tenant, sections 434, 435, pages 111–114; and 32 Am. Jur., Landlord and Tenant, sections 817, 818, pages 695–698.

In line with the foregoing this court, in Burner v. Higman & Skinner Co., 127 Iowa 580, 585, 103 N.W. 802, stated: "Presump-

tively the one who occupies premises is liable to one who is negligently injured while rightfully thereon. In some cases the landlord may also be liable, either individually or jointly with his tenant. The reason for the rule is that the tenant, and not the landlord, was, at common law, in the absence of covenant, bound to keep the premises in repair, in so far as strangers to the lease were concerned. There is also a social duty resting upon one who occupies premises to keep them in a reasonably safe condition for those whom he invites to come thereon. The landlord, as a general rule, however, has violated no duty which he owes to third persons, having exonerated himself when he lawfully committed the premises to the care of a tenant."

█ As stated by Prosser, Law of Torts, Hornbook Series, Third Ed., section 63, pages 411, 412: "When land is leased to a tenant, the law of property regards the lease as equivalent to a sale of the premises for the term. The lessee acquires an estate in the land, and becomes for the time being the owner and occupier, subject to all of the responsibilities of one in possession, both to those who enter upon the land and to those outside of its boundaries." ·

In effect this court accorded recognition to this theory when in Jensen v. Nolte, 233 Iowa 636, 639, 10 N.W.2d 47, we said: "A lease of real estate is a conveyance by the owner of a portion of the owner's interest therein to the lessee. It creates in the lessee an *interest* in the real estate." See also 32 Am. Jur., Landlord and Tenant, section 2, page 27.

█ III. Determining as we do, defendant-city stood in the position of a qualified owner and occupant of the playground at the time here concerned, we turn now to the matter of its attendant duties and responsibilities.

Section 368.30, Code, 1962, authorizes cities and towns to establish, purchase, maintain and regulate the use of parks and playgrounds.

And, section 389.12 provides in part they shall have the care, supervision and control of all public squares and commons and shall cause them to be open and in repair and free from all nuisances.

This court concluded in Woodard v. City of Des Moines, 182 Iowa 1102, 1106, 1107, 165 N.W. 313, the word "parks", as employed in section 368.30, includes pleasure grounds and spaces or open places for public use and public recreation.

Then in the more recent case of Lindstrom v. Mason City, 256 Iowa 83, 126 N.W.2d 292, we held section 389.12 imposes a greater duty upon cities and towns than that which attends business-invitee situations.

█ Municipal responsibility as to public playgrounds is statutory, and these places must be kept reasonably safe for the public use they were designed to serve. It is, in effect, the same duty which attends the care and maintenance of streets and sidewalks.

█ This does not mean a city or town stands in the position of an insurer of the safety of those using these recreational areas. It does mean, however, governmental immunity is eliminated if and when a municipality fails to exercise due care in keeping its parks and playgrounds in repair, safe for their intended usage, and free from nuisances.

Liability is imposed where injuries result from failure on the part of a city or town to exercise reasonable care to the end that those who may be expected to use and enjoy these public places are not subjected to injury or damage.

The foregoing finds support in Gorman v. Adams, 259 Iowa 75, 143 N.W.2d 648; Hall v. Town of Keota, 248 Iowa 131, 79 N.W.2d 784; and 63 C. J. S., Municipal Corporations, section 907(b), page 314.

The offending merry-go-round was on the rented property when defendant took possession and was still there the last day of the term.

█ In this regard the jury was advised by instruction 8, defendant-city could not be held liable absent proof it had actual notice of the condition of any equipment located on the demised premises, unless it had been open and observable and in existence for a sufficient length of time to enable the city, in the exercise of reasonable care, to learn of and remedy any defect. Also, if the condition was such that an injury to someone was not reasonably to be anticipated, the city would not be liable.

By virtue of this instruction a finding was inherent in the verdict for each plaintiff that this instrumentality was in an apparent dangerous condition which had existed a sufficient period of time to create constructive notice to defendant with attendant reasonable opportunity to remedy the hazardous defect.

Whether the playground device was or was not permanently affixed to the realty is here a matter of no consequence. It was under the control of the occupant, on a public recreational area, at time of injury to Craig Ronald Fetters, from which it follows defendant-lessee would be liable for any tortious harm done him regardless of the lessor's status.

IV. By its motion for new trial defendant also contends the verdict is excessive. The jury awarded $7700 to the boy, $103 to the father.

Although the trial court in ruling upon this motion refers generally to the amount of the verdict, we assume defendant's challenge is directed in large part, if not entirely, to the amount allowed the child.

The record discloses this youngster is right-handed. And as stated his right index finger was so seriously injured as to require amputation of about half of it. At time of trial the life expectancy of one his age was 62.35 years.

We have been repeatedly called upon to consider, weigh and determine the propriety of amounts awarded for personal injuries.

In so doing this court has said a comparison of verdicts is of little value in determining whether an award in a particular case is excessive. Each case must be evaluated according to the evidence peculiar to it alone.

And in dealing with the subject, recognition is given the reduced purchasing power of the dollar.

It is not for us to invade the province of the jury. In fact a verdict will not be set aside or altered unless it is (1) flagrantly excessive or inadequate; or (2) so out of reason as to shock the conscience or sense of justice; or (3) raises a presumption it is the result of passion, prejudice or other ulterior motive; or (4) is lacking in evidential support.

Sec in this regard Beyer v. City of Dubuque, 258 Iowa 476, 489, 139 N.W.2d 428, 436; Anthes v. Anthes, 258 Iowa 260, 276, 139 N.W.2d 201, 211; and DeToskey v. Ruan Transport Corp., 241 Iowa 45, 48, 40 N.W.2d 4, 17 A. L. R.2d 826.

In 1950 we allowed a verdict of $12,500 to stand where the right hand of an 18-month-old child was injured, requiring amputation of the little and third fingers at or near the base, and the second finger at the first joint. See Primus v. Bellevue Apartments, 241 Iowa 1055, 44 N.W.2d 347, 25 A. L. R.2d 565.

Had the case at hand come before us at the same time as did Primus, the verdict of $7700 might, on a comparative basis, have been deemed excessive. It is not now so considered.

 We are satisfied the verdicts in this case were reasonable and fair under all attendant circumstances.

Defendant cites no authorities which can be said to uphold its claim to the contrary.

 V. In ruling upon a motion for new trial, broad but not unlimited discretion is vested in the trial court and we are slower to interfere with the grant of that relief than with its denial. Rule 344(f) (3) (4), R. C. P., and Schroedl v. McTague, 259 Iowa 627, 643, 145 N.W.2d 48, 57–58.

However the discretion so accorded must have some support in the record. It cannot be arbitrarily exercised. McCoy v. Miller, 257 Iowa 1151, 1159, 136 N.W.2d 332; Lantz v. Cook, 256 Iowa 409, 411, 127 N.W.2d 675; Mazur v. Grantham, 255 Iowa 1292, 1302–1304, 125 N.W.2d 807; and Jacobsen v. Gamber, 249 Iowa 99, 101, 102, 86 N.W.2d 147.

We have carefully considered the elements involved in the order from which appeal was taken and find no support in the record for the grant of a new trial.

This conclusion applies with equal force to the case of the father individually, and that of the minor son brought by the father as next friend.

We reverse both cases and remand with directions to reinstate the verdicts and enter judgment for each plaintiff accordingly.—Reversed and remanded as to each plaintiff.

All JUSTICES concur except THORNTON, J., not sitting.