GERTIE UPDEGRAFF, Appellee, v. CITY OF OTTUMWA, Appellee; KRESGE REALTY COMPANY, Appellant.

No. 39695.

OCTOBER 15, 1929.

REHEARING DENIED APRIL 16, 1930.

*McNett, McNett & Kuhns,* for appellant.

*Jaques, Tisdale & Jaques* and *Jones & White,* for Gertie Updegraff, appellee.

*E. G. Moon,* for City of Ottumwa, appellee.

STEVENS, J.—Market Street in the city of Ottumwa runs north and south. Appellant is the owner of a building on the west side thereof, which abuts upon the street. Appellant acquired title to the property March 31, 1925, and on April 1st leased it to the S. S. Kresge Company. Long prior to these transactions, the owner of the building constructed a down spout on the cast side of the building, adjacent to the sidewalk, for the purpose of carrying water off the roof thereof. The down spout was constructed of galvanized iron, and conveyed the water through a tile, into which it was inserted at the lower end, into a sewer.

Early on the morning of December 16, 1925, while appellee and her husband were walking on Market Street, she fell, and was severely injured. The cause of her fall is alleged to have been an accumulation of ice on the sidewalk immediately opposite the down spout. The evidence showed that there was a hole in the down spout, about three feet and three inches above the sidewalk. It is the claim of appellee that snow, recently falling on the roof of the building, had melted, the preceding day, and that the water, escaping from the hole in the down spout, fell upon the sidewalk, freezing, and causing ice to form,

as previously stated. Evidence was introduced which tended to show, and from which the jury might have found, that the defect in the down spout existed at the time of, and for several months prior to, the acquisition of title to the building by appellant and the execution of the lease to the S. S. Kresge Company. We will first dispose of the appeal of the Realty Company.

I. The duty of maintaining the streets and sidewalks in a reasonably safe condition is imposed by statute upon cities and towns. Section 5945, Code, 1927. The duty thus imposed  by statute upon municipalities does not, however, relieve property owners or others from the duty not to obstruct or place dangerous instrumentalities thereon, so as to endanger the safety of the public rightfully using the same, nor from liability for damage occasioned thereby. *Perry v. Castner*, 124 Iowa 386; *Edwards v. Hasel*, 157 Iowa 416; *City of Ottumwa v. Parks*, 43 Iowa 119; *Calder v. Smalley*, 66 Iowa 219; *Atkinson v. Sheriff Motor Co.*, 203 Iowa 195. This rule has been applied in many cases and under a great variety of facts. It is elementary that the owner of a building abutting upon a public street may not lawfully collect water accumulating from rain or snow upon the roofs of buildings, and by some artificial means discharge the same upon the sidewalk or street, where it freezes and forms ice. *Atkinson v. Sheriff Motor Co.*, supra; *Betts v. Carpenter*, 239 Mich. 260 (214 N. W. 96); *Benard v. Woonsocket Bobbin Co.*, 23 R. I. 581 (51 Atl. 209); *Tremblay v. Harmony Mills*, 171 N. Y. 598 (64 N. E. 501); *Reedy v. St. Louis Brew. Assn.*, 161 Mo. 523 (61 S. W. 859); *Stephens' Admr. v. Deickman*, 158 Ky. 337 (164 S. W. 931); *Cerchione v. Hunnewell*, 215 Mass. 588 (102 N. E. 908); *Hynes v. Brewer*, 194 Mass. 435 (80 N. E. 503); *Field v. Gowdy*, 199 Mass. 568 (85 N. E. 884). Nor may such owner negligently permit the water to escape from a defective down spout or other agency and accumulate upon the sidewalk so as to freeze and cause injury to others. *Stephens' Admr. v. Deickman*, supra; *Hynes v. Brewer*, supra; *Woram v. Noble*, 41 Hun (N. Y.) 398; *Delaware, L. & W. R. Co. v. Madden*, 241 Fed. 808.

It is further alleged in the petition that, long prior to the construction of the down spout in question, the city council of

the city of Ottumwa enacted an ordinance making it "unlawful for any person, firm, partnership or corporation to permit any of the down spouts or gutters from any building to be so constructed as to directly or indirectly discharge water upon any of the sidewalks of the city," and requiring that "all down spouts or discharge gutters shall be constructed so as to run the water from the building which they drain, into the gutters or sewers of the city so as not to permit the water discharged therefrom to run upon or spread over the surface of any sidewalk." The court interpreted this ordinance as imposing an affirmative duty upon appellant to maintain the down spout in a reasonably safe condition, so as not to directly or indirectly discharge water upon the sidewalk.

Before considering this theory of the case, we desire to dispose of another proposition urged by appellant for reversal: namely, that the written lease by which the building and premises in question were leased to the S. S. Kresge Company contained a provision requiring the lessee to, "at its own expense, make any and all repairs which may be necessary to said premises or any part thereof, damage by fire and unavoidable casualty excepted;" and that this condition of the lease relieved it from liability for damages occurring during the term of said lease because of negligence on the part of the tenant to repair the down spout, or in failing to keep it in good condition.

The law is doubtless well settled in this and most, if not all, other jurisdictions that the landlord who has parted with full possession and control of his premises by lease to a tenant  is not liable for injuries to third persons caused by the negligence of the tenant. *Starr v. Sperry*, 184 Iowa 540; *Dillehay v. Minor*, 188 Iowa 37; *Willis v. Snyder*, 190 Iowa 248; *Morse v. Houghton*, 158 Iowa 279; *Burner v. Higman & Skinner Co.*, 127 Iowa 580. But, on the other hand, if the nuisance exists at the time the lease is executed, a covenant therein requiring the tenant to make repairs at his own expense will not relieve the landlord from liability for injuries occasioned thereby. *Maloney v. Hayes*, 206 Mass. 1 (91 N. E. 911); *Ames v. Brandvold*, 119 Minn. 521 (138 N. W. 786); *Lufkin v. Zane*, 157 Mass. 117 (31 N. E. 757); *Dalay v. Savage*, 145 Mass. 38 (12 N. E. 841); *Wixon v. Bruce*, 187 Mass. 232 (72 N. E. 978); *Cerchione*

*v. Hunnewell,* supra; *Swords v. Edgar,* 59 N. Y. 28; *Fenno v. Gay,* 146 Mass. 118 (15 N. E. 87) ; *Wunder v. McLean,* 134 Pa. St. 334 (19 Atl. 749) ; *Harte v. Jones,* 287 Pa. St. 37 (134 Atl. 467) ; *Samuelson v. Cleveland Iron Min. Co.,* 49 Mich. 164 (13 N. W. 499) ; *Gardner v. Rhodes,* 114 Ga. 929; *Lee v. McLaughlin,* 86 Me. 410; *New Castle v. Kurtz,* 210 Pa. St. 183 (59 Atl. 989). This rule appears to have been quite generally adopted in other jurisdictions, but has not squarely arisen in this state.

The proposition urged by appellant at this point, although supported by authority, is not decisive of this case.

As already stated, the evidence, more or less indefinite in character, it is true, disclosed that the defect in the down spout had continuously existed for months prior to the date of the  lease. Some paragraphs of the court's charge to the jury were apparently framed on the theory that the jury might find, under this evidence, that the condition complained of antedated the execution of the lease, and that, if it did, the terms of the lease did not constitute a defense. Other paragraphs of the charge, however, clearly submitted the case to the jury upon the theory that the defect in the down spout existed in violation of the provisions of the ordinance, and that, if the jury so found, it constituted negligence. It is of these instructions that appellant complains.

Appellant rests its contention upon the hypothesis that the owner of the building, having constructed a down spout of sufficient size and material and in a manner to carry water accumulating on the roof into a sewer, and so as not to discharge it directly or indirectly upon the sidewalk, has met the full requirement of the ordinance. The argument of counsel proceeds on the theory that the word "constructed," as used in the two sections of the ordinance, must be limited in their scope and application to the original down spouts, and cannot be so interpreted as to impose an obligation on the owner to maintain the same in its original condition. This argument is based largely upon the thought that the ordinance is penal in character, and must be strictly construed. Primarily, the duty of the property owner is to comply with the ordinance in the construction of down spouts. This must be full and adequate. The purpose of the ordinance obviously was to prevent the owner

of buildings from discharging water therefrom upon the sidewalk in such a manner and under such conditions as to imperil the safety of the public using the same. The ordinance does not prescribe the material necessary to be used in the construction of down spouts. A building, as ordinarily constructed in cities and towns, is permanent in character. Likewise, the streets upon which it abuts, and the improvements, such as sidewalks and pavement, are of a similar character, and likely to continue indefinitely. The danger to be apprehended from the discharge of water by the owner of a building upon the sidewalk is, in this climate, a continuing one. A down spout, constructed of perishable material, is not ordinarily as permanent in character as the building to which it is attached. The ordinance does not contemplate any limitation in point of time. The duty imposed is as permanent as the possible conditions sought to be remedied. The question is not, therefore, whether a duty is imposed upon the owner of a building to maintain a down spout as originally constructed, but what scope and effect are to be given to the plain terms thereof. The plain contemplation of the ordinance is that down spouts shall be so constructed and of such material as to permanently prevent the conditions sought to be avoided. In other words, the duty imposed is an original and continuing one. No one would contend that an ordinance requiring the roofs of buildings to be constructed of fireproof material would not be violated if, after the destruction of the original roof, it was replaced by one constructed of shingles or other non-fireproof material. The construction thus placed upon the ordinance harmonizes with the purpose and intent of the city council in its enactment, and gives full effect thereto. The exceptions preserved to the instructions complained of at this point must be overruled. Many authorities are cited by counsel on both sides, remotely bearing upon the question we have been discussing. We deem it unnecessary either to cite or distinguish them from the case before us. The instructions properly submitted the case to the jury on the theory indicated, on which it was tried. *Red Lake Falls Mill. Co. v. City of Thief River Falls,* 109 Minn. 52 (122 N. W. 872).

II. The evidence tended to show that, as the result of the injuries to appellee, a blood clot, called a hematoma, appeared on the right side of the uterus, and that it could have

 been removed by an operation, and that, if this were done, the health of appellee would probably be improved. No operation has been performed. Appellant requested the court to instruct the jury, in substance, that it was the duty of appellee to take such steps as an ordinarily careful and prudent person would have taken, in the exercise of ordinary care, to reduce her damages to the minimum, and that, if the jury believed from the evidence that her condition would be improved by the removal of the blood clot, and it was advised by a competent physician and surgeon that such operation was necessary to that end, the damages to be allowed, if any, should be reduced accordingly. The court refused this instruction, and gave one on its own motion, which, in effect, told the jury that it was the duty of appellee "to make use of reasonable means to effect as speedy and complete a cure as could be reasonably accomplished, under all the circumstances, and that, if she failed to do so, she could not recover for any injuries, suffering, or disability caused or induced by such failure." The court further told the jury that appellee was not required to undergo a serious or speculative surgical operation, "but if, by slight expense and by slight inconvenience, plaintiff might have avoided the consequences of her injury, if any, it was her duty to do so, and if a slight operation, involving but slight inconvenience, would have relieved plaintiff, or some of her suffering or disability, if any, it was her duty to alleviate her injury, and if she failed and neglected to do so, she cannot recover for suffering, inconvenience, or disability that might thus have been avoided."

The instruction requested by appellant was taken from *Ward v. Ely-Walker Dry Goods Bldg. Co.*, 248 Mo. 348 (154 S. W. 478), in which case it was upheld. The instruction given by the court on its own motion is based almost literally upon the language of this court in *Bailey v. City of Centerville*, 108 Iowa 20, and *White v. Chicago & N. W. R. Co.*, 145 Iowa 408. The Supreme Court of Washington, in *Dahl v. Wagner*, 87 *Wash.* 492 (151 Pac. 1079), in discussing a similar case, would appear to support the Missouri rule. Other cases brought to our attention tend to support the rule announced in the instruction. *Leitzell v. Delaware, L. & W. R. Co.*, 232 Pa. St. 475 (81 Atl. 543); *Maroney v. Minneapolis & St. L. R. Co.*, 123 Minn.

480 (144 N. W. 149); *Martin v. Pittsburgh Railways Co.*, 238 Pa. St. 528 (86 Atl. 299).

Whether the instruction complained of might have gone somewhat further in the statement of the law, and imposed a higher duty upon appellee, we need not, under the facts of this case, determine. The operation, if one had been had, would, we gather from the evidence, have been a comparatively simple one. The medical witnesses, however, testified that, as an anesthetic would be required, it would not be without the possibility of danger. The expense necessary to be incurred, according to the testimony of the experts, would have been several hundred dollars. The instruction was in harmony with the prior decisions of this court, and we think it clearly met all of the requirements of the case.

III. Testimony was received tending to show that, some six days after the accident, the down spout was clogged with ice. Objection was interposed to this testimony upon the ground  that it was remote. The objections were properly overruled. The evidence tended to show that the weather conditions following the accident were much the same as on the day thereof. There was variation in the temperature, as shown by the testimony, but not such as to effect substantial changes in the condition of ice formed and existing in the pipe at the time of the accident.

IV. Other evidence to which objection was interposed by appellant was admitted by the court. The ruling thereon, if erroneous, was necessarily without substantial prejudice to appellant. It is further urged by appellant that the verdict of the jury was the result of passion and prejudice, and that there was misconduct of witnesses occurring at the trial, and other alleged irregularities that were prejudicial to appellant. There is nothing whatever in the record to support the contention that the verdict was the result of passion and prejudice on the part of the jury, nor should it be said that the alleged misconduct of witnesses and other irregularities complained of were of a character to affect the result and were, therefore, prejudicial. We have not discussed the propositions relied upon by appellant seriatim, nor in the order in which they are treated in the briefs filed. What we have said, however, sufficiently indicates the

court's views upon all of them, and sufficiently disposes of its appeal.

V. We come now to consider the cross-appeal of plaintiff-appellee. The court, in submitting the issues against the city, gave the customary instruction on the subject of notice. Error  is predicated on the giving of this instruction, upon the theory that the court should have told the jury that, if the city had, or should have had, notice of the defective condition of the down spout and that same had become a nuisance because ice had previously accumulated upon the sidewalk on account thereof, it was unnecessary for the city to have further notice of the condition of the walk at the time of the accident, or time to remove the same. The instruction given was abstractly correct. If appellee desired a further instruction on the subject,—that is, one that would more fully have submitted her theory of notice to the jury,—an instruction to that effect should have been requested. If the city knew, or in the exercise of reasonable care should have known, of the presence of ice upon the sidewalk in a condition likely to cause injuries to pedestrians, and it failed to remove the same within a reasonable time, it was liable for damages to any person injured. Such was the language and purport of the instruction given. The question was one of notice, and not of an original cause of action.

This is the only ground relied upon by appellee, on her cross-appeal, for reversal. In our opinion, it is without merit. For the reasons already indicated, the judgment in favor of the city and also against the Realty Company should stand.— *Affirmed on both appeals.*

ALBERT, C. J., and DE GRAFF, MORLING, and WAGNER, JJ., concur.