WILBUR E. BARRETT, Appellee, v. VICTOR A. STONEBURG et al., Appellants; MILTON D. AVERY et al., Appellees.

No. 47108.

November 11, 1947.

Free, Berry & Free, of Sioux City, for appellant Stoneburg.

Crary, Munger & Crary, of Sioux City, for appellant Larsen.

Hatt & Huff, of Sioux City, for appellee Barrett.

Stewart & Hatfield, of Sioux City, for appellees Avery.

OLIVER, C. J.—Defendant Stoneburg owned a two-story building at 417 Pearl Street, Sioux City. It was constructed about sixty years ago of a type of brick known as soft brick, with lime mortar. January 31, 1946, Stoneburg leased the property to defendant Larsen but did not give Larsen possession of the entire building until some time later. After May 1st, Larsen operated a beer tavern on the first floor. He subleased the second floor to Mr. and Mrs. Hansen for living apartments.

Joining the Stoneburg building on the north was another old two-story-brick building at 419 Pearl Street. It was owned by defendants Avery and occupied by defendant Avery Bros. Sign Co. Both buildings faced east. Each was twenty-five feet wide. The partition between them was a party wall.

October 11, 1946, plaintiff, Barrett, accompanied by his wife, drove his automobile to Sioux City, parked it at the curb in the street in front of these buildings, and left the vicinity. Shortly thereafter the buildings collapsed and fell of their own weight. Some of the debris fell upon and damaged the parked automobile. Plaintiff's action for such damages, against the owners and lessees of both buildings, resulted in verdict and judgment against all defendants. Defendants Stoneburg and Larsen have appealed.

Plaintiff's petition alleged (Count I) the buildings were old and in a dangerous condition and unsafe for occupancy,

which fact was, or should have been, known to each defendant and defendants were negligent in failing to repair and (Count II) defendants were negligent in the use and management of the buildings under their exclusive care and control. The petition also alleged defendants' negligence was the proximate cause of the collapse and the resultant damage to the automobile and that plaintiff was free from contributory negligence.

A police officer testified that after the collapse, "the center of the two buildings was down in kind of a valley shape." A photograph in evidence shows the two shattered roofs in the form of a broad V with its base along the line where the party wall had stood. It shows also the debris piled upon the adjacent sidewalk, street, and parked automobiles, and in the wrecked interior. The city building inspector who examined the wreckage testified the partition (party) wall between the two buildings "had squashed and settled about 42 inches" and had breaks on both sides—"the partition wall failed." The giving way of this wall in the basement might have been the primary cause or a secondary cause. On cross-examination he testified the primary cause might have been the roof or second floor of either building collapsing.

Mrs. Hansen testified—they inspected the building early in April and moved into the second floor April 22d—the walls were cracked and in bad shape—there were cracks in the corners and at the north—the floors bulged "like the building coming together"—they sloped and bulged and sagged and waved—the windows in the east part of the second floor were sagging down and this was called to the attention of Stoneburg and Larsen and they came up there and inspected the windows about a week after the Hansens moved into the building.

About 3 p. m. on October 11th she was ironing in her apartment at the west end of the building—she heard a little cracking or crackling noise in the north wall where it was cracked —heard people calling for help—saw things slipping in—it slipped to the south and east and this wall came down—when the north wall broke off it let that end of the floor down—the roof did not fall in her apartment—it broke even at the north wall—some pipes fell upon her—the west end of the floor did not fall in at that time—it broke beside the ironing board and

fell in such a manner that she could see down—her husband came in with an axe and took her out down the back way.

For defendants, Avery testified the building at 419 Pearl Street appeared to be in good condition. Stoneburg testified he inspected his building when he bought it in 1945—knew of no structural defects then or later—noticed no cracks in the walls, bulging floors or other defects testified to by Mrs. Hansen— heard no complaints concerning its condition—never met Mrs. Hansen—had not inspected the second floor nor basement since he bought the building. Larsen testified the sash in the east window on the second floor was "kind of rotted and dried out" but he observed nothing wrong with the window casing or other parts of the building. The builder who reconstructed the collapsed Stoneburg building testified for defendants that a possible cause of the collapse was that over a period of years the joists in the Avery roof sagged and the ends slipped off the bearing on the party wall and knocked it down.

The jury returned a general verdict for plaintiff and specially found by answers to interrogatories: (1) That prior to the accident Larsen was able to see or know of the conditions or defects existing which produced the collapse. (2) That he knew the buildings were in an unsafe or defective condition. (3) That he should have known of the condition of the Stoneburg building. (4) That Stoneburg should have known of the condition of his building prior to the accident.

I. The only questions raised upon appeal relate to the sufficiency of the evidence to sustain the verdict against each appellant. Hence, the record will be considered in the light most favorable to plaintiff.

Larsen's lease provided he should keep the premises in as good repair as they then were or might be placed by Stoneburg, except major repairs to the roof (which Stoneburg made about April 29th), that Larsen should have immediate possession of the second floor and of "the balance of said building after present tenant is removed." Larsen testified he secured possession of this "balance" in April.

. Plaintiff was a stranger or member of the general public whose automobile was damaged while lawfully parked in a

public highway. The general rule in such cases is thus stated in annotations in 7 A. L. R. 204, 205, and 138 A. L. R. 1078, 1079:

"A building abutting on a highway must be so constructed and maintained that it will not fall and injure persons lawfully on the highway. While the owner or person in control of such a structure is not an insurer, he is bound to use reasonable care and skill in the construction and maintenance of the building, and he is obliged to inspect from time to time. If the building or any part thereof, when constructed or purchased, is in an inherently dangerous condition so that it is liable at any time to fall and injure persons in the highway, or if it becomes in such condition by reason of use or mismanagement, it is a nuisance, and the person whose duty it is to remedy the defect must do so within a reasonable length of time after the creation of the nuisance."

Among decisions enunciating this rule are:

Mullen v. St. John, 57 N. Y. 567, 15 Am. Rep. 530; Waterhouse v. Joseph Schlitz Brewing Co., 12 S. D. 397, 81 N. W. 725, 48 L. R. A. 157; id. 16 S. D. 592, 94 N. W. 587; Kelly v. Laclede Real Estate & Investment Co., 348 Mo. 407, 155 S. W. 2d 90, 138 A. L. R. 1065; Klein v. Price, 179 Okla. 272, 65 P. 2d 198.

Connolly v. Des Moines Investment Co., 130 Iowa 633, 634, 105 N. W. 400, states:

"It may safely be said, however, that where a building is so situated as to be a menace to travel on a public street, if it become dangerous from faulty construction or other cause, a continuing duty of inspection may exist, and unless the owner has discharged this duty, he may not have exercised the reasonable care required by the law."

Goodwin v. Mason & Seabury, 173 Iowa 546, 549, 550, 155 N. W. 966, 967, quotes with approval:

" 'Parties erecting upon their own land chimneys or walls or other structures, so situated that they may fall upon and injure the persons or property of others, are bound, at their

peril, to use proper care in their erection and maintenance. By "proper care" is meant such degree of care as will prevent injuries from any cause except those over which the party would have no control, such as vis major, acts of public enemies, wrongful acts of third persons, and the like, which human foresight could not reasonably be expected to anticipate and prevent. * * * The duty thus resting upon the defendants was one which they could not fulfill by the employment of a competent mason to examine the chimney, and by relying upon his opinion. As far as it went, it was an absolute duty; and nothing short of actual performance of it, or a fall of the chimney due to some one of the excepted causes, would excuse them. It is almost needless to add, that the fall of the chimney, unless caused by some one or more of the excepted causes, naturally would lead to the inference of an omission of duty in building or maintaining it.' [Cork v. Blossom, 162 Mass. 330, 333, 38 N. E. 495, 496, 26 L. R. A. 256, 258, 44 Am. St. Rep. 362, 365] * * * 'This duty of exercising care, being *absolute in its nature, cannot be devolved upon others,* but it is one of those absolute duties which rests upon every owner of fixed property.' " 1 Thompson, Commentaries on Law of Negligence, 966, section 1059.

Aside from the evidence of its apparent condition, the proof that the building collapsed and fell of its own weight would lead to the inference of an omission of duty in maintaining it and was prima-facie evidence of negligence on the part of Larsen. The weight of the inference as well as the weight of the explanation was for the jury. Weber v. Chicago, R. I. & P. R. Co., 175 Iowa 358, 372, 151 N. W. 852, L. R. A. 1918A, 626; 45 C. J., Negligence, section 784; Prosser on Torts (1941) 308, section 44; Klein v. Price, 179 Okla. 272, 65 P. 2d 198, 199.

Nor would the result be otherwise if it be assumed the collapse was caused by some defect in the party wall, control of which was shared with the Averys. Prosser on Torts (1941) 299, section 43; Sutcliffe v. Fort Dodge Gas & Elec. Co., 218 Iowa 1386, 1390, 257 N. W. 406; Kelly v. Laclede Real Estate

& Inv. Co., 348 Mo. 407, 155 S. W. 2d 90, 138 A. L. R. 1065. The question of Larsen's liability was for the jury.

■ II. Appellant Stoneburg contends the tenant in control of a leased building and not the landlord is prima facie liable for damages to third persons from its fall. See 32 Am. Jur., Landlord and Tenant, section 817; annotations in 7 A. L. R. 204, 211, and 138 A. L. R. 1078, 1086. However, the landlord also is liable where the injury resulted from the permanent condition of the building (not the use thereof by the tenant) and such condition existed at the time of the lease. Kelly v. Laclede Real Estate & Inv. Co., supra; Waterhouse v. Joseph Schlitz Brewing Co., supra; Mitchell v. Brady, 124 Ky. 411, 99 S. W. 266, 13 L. R. A., N. S., 751, 124 Am. St. Rep. 408.

An annotation in 7 A. L. R. 204, 210 (repeated in substance in 138 A. L. R. 1078, 1079) states:

"The owner of a completed building which adjoins a highway is liable to a person passing in the street who may be injured by the falling of any part of the structure, although the premises are in possession and under exclusive control of a tenant, if the building * * * is, when leased, in such condition that it is liable at any time to fall of its own weight. Such a condition constitutes a nuisance * * *."

Burner v. Higman & Skinner Co., 127 Iowa 580, 585, 103 N. W. 802, 804, states:

"Another exception exists where there is a defect in the premises leased, existing at the time of the demise, that constitutes a nuisance which it is the duty of the landlord to abate. In such cases both the landlord and the tenant are liable—the former as author and the latter as continuor of the nuisance."

Under such circumstances the tenant's covenant to make repairs will not relieve the landlord from liability. Updegraff v. City of Ottumwa, 210 Iowa 382, 385, 226 N. W. 928; 36 C. J., Landlord and Tenant, section 950; 25 Am. Jur., Highways, section 368.

■ Here the jury could have found from the record that in April, when Stoneburg gave Larsen possession of the build-

ing, it was in such ruinous and inherently dangerous condition that it was liable, at any time, to fall of its own weight, and that such condition was apparent to Stoneburg. This would constitute a nuisance and Stoneburg as well as Larsen would be liable for damage to persons or property in the highway resulting therefrom.

The court did not err in submitting to the jury the question of Stoneburg's liability.—Affirmed.

BLISS, HALE, GARFIELD, SMITH, MANTZ, MULRONEY, and HAYS, JJ., concur.