Lester J. TRNKA, Appellant,

v.

**ELANCO PRODUCTS CO., A DIVISION OF ELI LILLY AND COMPANY, Appellee.**

No. 82–2083.

United States Court of Appeals, Eighth Circuit.

Submitted May 17, 1983.

Decided June 17, 1983.

Jack G. Marcil, Steven K. Aakre, of Tenneson, Serkland, Lundberg, Erickson & Marcil, Ltd., Fargo, N.D., for appellant.

Stephen Plambeck, of Nilles, Hansen, Selbo, Magill & Davies, Ltd., Fargo, N.D., for appellee.

Before ROSS and ARNOLD, Circuit Judges, and SCHATZ,* District Judge.

SCHATZ, District Judge.

In this removed diversity action, the plaintiff-appellant, Lester J. Trnka (Trnka), appeals from a summary judgment entered in the district court[1] dismissing his complaint. Trnka alleged as his cause of action that the defendant-appellee, Elanco Products Company (Elanco) negligently manufactured a herbicide called Treflan, manufactured and marketed defective Treflan and breached certain warranties in conjunction with the sale of a quantity of Treflan to Trnka.

For reversal, Trnka contends that the trial court erred in rendering summary judgment against him because: (1) there were genuine issues of material fact as to whether the parties entered into a binding settlement agreement; and (2) North Dakota Century Code § 28–01–40, as amended (requiring the claimant to timely file a verified report of loss with the agriculture commissioner as a prerequisite to commencement of a civil action arising out of the use or application of any agricultural chemical by any applicator or operator) should not be applied to bar Trnka's complaint under the facts here present. We affirm the district court on the basis of the settlement agreement executed by the parties and, therefore, need not and do not reach the statutory issue upon which the trial judge relied as an alternative ground to support the entry of summary judgment in favor of Elanco.

Preliminarily, it is recognized that in reviewing a decision of a district court to

---

* The Honorable Albert G. Schatz, United States District Judge for the District of Nebraska, sitting by designation.

1. The Honorable Paul Benson, Chief Judge, United States District Court for the District of North Dakota.

grant summary judgment, we must apply the same strict standard as the district court. *Hines v. Rinker,* 667 F.2d 699, 700 (8th Cir.1981). Under Fed.R.Civ.P. 56(c), summary judgment should not be entered unless the pleadings, stipulations, admissions and affidavits in the case show that there exists no genuine issue as to any material fact. *Vette Co. v. Aetna Casualty & Surety Co.,* 612 F.2d 1076, 1077 (8th Cir. 1980). "The drastic nature of the summary judgment remedy imposes on the defendant who seeks it the burden of establishing, with such clarity as to leave no room for controversy, that the plaintiff is not entitled to recover under any circumstances." *Ralph's Distributing Co. v. AMF, Inc.,* 667 F.2d 670, 672 (8th Cir.1981); *accord, Westborough Mall v. City of Cape Girardeau,* 693 F.2d 733, 736–37 (8th Cir.1982). We are required to view all evidence in the light most favorable to the party opposing the summary judgment motion, and to give that party the benefit of all reasonable inferences to be drawn from the underlying facts disclosed in pleadings and affidavits filed in the suit. *Hines v. Rinker, supra; Howard v. Russell Stover Candies, Inc.,* 649 F.2d 620, 623 (8th Cir.1981); *Vette Co. v. Aetna Cas. & Sur. Co., supra.* However, this circuit recognizes the remedy's salutary purpose of avoiding useless and time-consuming trials in proper cases. *Butler v. MFA Life Ins. Co.,* 591 F.2d 448, 451 (8th Cir.1979).

The facts disclosed by the record are these. In May of 1979, Trnka purchased a quantity of Treflan from Oakes Fertilizer Company (Oakes). On May 18 and 19, 1979, Oakes applied the Treflan to Trnka's sunflower field, and Trnka incorporated it into the soil. In July, 1979, Trnka contacted Oakes and complained that the Treflan had not effectively controlled weeds. On July 16, 1979, a field sales representative employed by Elanco, together with Trnka and the manager of Oakes, visited Trnka's farm, visually examined the treated field and discussed the performance of the incorporated Treflan. Elanco's representative indicated he would recommend that Trnka be given a "refund" of twenty gallons of Treflan for use the following year. It was understood that the proposed refund was subject to the approval of Elanco's district manager or regional manager. Trnka said: (1) that he did not consider the refund proposal to be an offer, since the sales representative lacked authority to bind Elanco; and (2) that he could not be sure of his actual damages until after the sunflower crop had been harvested. Thereupon, Elanco's representative and Trnka reviewed and executed a document entitled "Settlement Agreement," which provided as follows:

Customer's Name Les Trnka Date 07/16/79
Address _____ City Oakes State N.D. Zip 58474
 Dickey Co.

I have personally inspected the farm of the above complainant and recommend that a refund of 20 gallons be made.

Jerry Bloms (signed) D. Roger Smith (signed)
Salesman Approval–Dist. or Reg. Manager

* Attach paid receipt of purchase

 I agree that the payment of 20 gallons fully satisfies my claim arising out of the use of treflan as specified and hereby fully release and discharge Elanco Products Company and Eli Lilly and Company from all liability for such claim.

 Lester J. Trnka (signed)
Director–Sales User signature

This agreement was later approved and signed by Elanco's district manager, D. Roger Smith. Elanco then issued a merchandise certificate dated August 7, 1979, in the amount of "4 × 5 gal." of Treflan, entitling Trnka to receive the twenty gallons of Treflan at no charge. Trnka received the merchandise certificate, but never attempted to redeem the certificate or to rescind the written agreement he signed on July 16, 1979. Further, it appears from the record that, prior to the filing of the instant action in North Dakota state court on or about November 14, 1980, Trnka failed to notify Elanco that he (Trnka) did not consider the matter settled and compromised. After receiving the merchandise certificate, Trnka communicated his intention to refuse Elanco's refund "offer" to the manager of Oakes.

Due to the alleged Treflan failure and resultant weed infestation, Trnka claims to have sustained substantial crop loss as well as consequential damages. It may be noted that Trnka has been licensed since 1966 to practice law in North Dakota, and appar-

ently maintains a general law practice in Oakes, North Dakota. Trnka is also a former insurance adjuster who had experience in the investigation and settlement of property damage claims.

With regard to the nature and effect of the settlement agreement executed on July 16, 1979, the district court found that: (1) pursuant to North Dakota law, a written contract supersedes all oral negotiations; (2) the document signed by Trnka and Elanco's sales representative is facially unambiguous and releases Elanco of liability in exchange for twenty gallons of Treflan; and (3) the subsequent approval of the compromise offer by Elanco's district manager along with delivery of the merchandise certificate to Trnka rendered the instrument a binding contract. Trnka argues on appeal that: (a) parol evidence should have been admitted to show that the writing signed by Trnka "was never executed or delivered as a contract," *Hartford Accident & Indemnity Co. v. Anderson,* 155 N.W.2d 728, 731 (N.D.1968); (b) parol evidence should have been admitted to explain the settlement agreement, which lacks mutual covenants and fails to contain essential terms; and (c) the question of whether there has been an accord and satisfaction is for the jury.

Our independent judgment as to the meaning and effect of the settlement agreement is in accord with that of the district court. *See Howard v. Russell Stover Candies, supra,* 649 F.2d at 624. We believe that the trial court properly found the provisions of the July 16, 1979, agreement to be clear and unambiguous.[2] Applying general principles of contract law to the facts of the instant case, it is clear that the document in question, when signed by Trnka, became his proposal or offer, and that such proposal or offer was accepted by Elanco when its district manager executed the instrument. *See 1 Corbin on Contracts*

§ 24, at 73–74 (1963). The writing then represented the bargain between them.

We are satisfied that the circumstances show a sufficient objective manifestation of assent to the terms of the compromise agreement by the parties and that they are bound by it. *See North Central Jobbers v. Snortland,* 329 N.W.2d 614, 617 (N.D.1983); *Amann v. Frederick,* 257 N.W.2d 436, 439 (N.D.1977). In addition to signing the agreement, Trnka manifested his assent to the bargain by failing to communicate revocation of his offer prior to its acceptance by Elanco, by retaining the merchandise certificate for a period in excess of one year, and by making no attempt to contact Elanco before commencing an action in state court. Stated somewhat differently, Trnka's conduct subsequent to July 16, 1979, is patently inconsistent with the assertion that he considered the settlement agreement to be non-binding. Unlike the situation presented in the factually distinguishable case of *Hartford Accident & Indemnity v. Anderson, supra,* Trnka did not claim or allege that the settlement in question "was the result of fraud, duress, undue influence, or any of the other grounds which would warrant setting aside a contract." *Bohlman v. Big River Oil Co.,* 124 N.W.2d 835, 839 (N.D.1963). As pertinently stated by the North Dakota Supreme Court in *Hanes v. Mitchell,* 78 N.D. 341, 49 N.W.2d 606 (1951);

It is the duty of every contracting party to learn and know [the agreement's] contents before he signs and delivers it. He owes this duty to the other party to the contract, because the latter may, and probably will, pay his money and shape his action in reliance upon the agreement. *To permit a party, when sued on a written contract, to admit that he signed it but to deny that it expresses the agreement he made or to allow him to admit that he signed it but did not read it or*

---

**2.** Trnka has argued that the settlement agreement is unenforceable because certain terms, such as the time and mode of delivery of the refunded Treflan, had not been fully agreed upon. However, the fact that the parties left insubstantial matters for later negotiation, or that certain ministerial tasks remained to be performed in order to implement the settle-

ment, "does not vitiate the validity of the agreement reached." *Bergstrom v. Sears, Roebuck & Co.,* 532 F.Supp. 923, 932 (D.Minn. 1982); *see Kaldor v. Bjerke,* 300 N.W.2d 202, 205 (N.D.1980). The document signed on July 16, 1979, adequately sets forth, in express terms, the intent of the parties.

*know its stipulations would absolutely destroy the value of all contracts.* The purpose of the rule is to give stability to written agreements and to remove the temptation and possibility of perjury, which would be afforded if parol evidence were admissible.

49 N.W.2d at 610 (emphasis added).

■ It is well established in this circuit that disputes involving the interpretation of unambiguous contracts are appropriate cases for the entry of summary judgment. *Parish v. Howard,* 459 F.2d 616, 618 (8th Cir.1972). Trnka, an attorney and former insurance adjuster, is attempting herein to extricate himself from being bound by a clear, complete and voluntary agreement which ultimately proved to be disadvantageous. That he will not be allowed to do. *See Bohlman v. Big River Oil Co., supra,* 124 N.W.2d at 837 (North Dakota law looks favorably upon the compromise of controversies between parties; where a settlement is fairly made, it is final and conclusive on the rights of the parties to the settlement). For the reasons stated above, we conclude that there exists no genuine issue as to any material fact, and that the substantive law was correctly applied. We therefore affirm the judgment of the district court.