PER CURIAM.
 

 Graves Construction Company, Inc. appeals from orders of the district court
 
 [1]
 
 granting summary judgment and partial summary judgment in favor of William Gibbons, the Trustee in Bankruptcy of the Chicago, Rock Island and Pacific Railroad Company on his claim for indemnity for $200,000 paid to settle an employee’s injury suit. For reversal Graves argues that the district court erred in finding that Gibbons was entitled to contractual indemnity from Graves and in awarding Gibbons certain expenses. We affirm.
 

 On March 9, 1978, Gibbons contracted with Early Iron and Metal Company for the removal of an abandoned railroad branch line. The contract contained the following indemnity provision:
 

 Section 10. Contractor agrees to indemnify railroad against, and save it harmless from, any and all liability for loss or damage to property and for injury to or death of persons resulting in whole or part, directly or indirectly, from or in connection with the performance of this contract by Contractor or its contractors or subcontractors, or the occupation or presence of Contractor or its officers, agents, contractors, subcontractors and employees upon the premises of the railroad in connection with the performance of this contract . .. Contractor further agrees to indemnify railroad and save it harmless from all expense of investiga
 
 *755
 
 tion, adjustment, litigation, and defense of any and all claims or suits whether groundless or not, on account of any loss, injury or death against which Contractor herein agrees to indemnify railroad, and upon request of railroad to assume the defense thereof in the name of the railroad.
 

 On April 17, 1978, Early entered into a subcontract with Graves. Section 1 of the subcontract provided that Graves would “furnish all labor, material and equipment necessary to perform and complete the work ... as per contract” between Early and Gibbons. The subcontract further provided:
 

 SECTION 6. Subcontractor agrees to be bound by all terms and conditions of all provisions of the General Conditions of the Contract (AIA A 201 latest edition unless otherwise specified)
 

 Insofar as the provisions of the General Contract do not conflict with specific provisions herein contained, they, and each of them are hereby incorporated into this Subcontract as fully as if completely rewritten herein. The Subcontractor agrees to be bound to the Contractor by all terms of the General Contract applicable to this Subcontract, and to assume toward Contractor, with respect to the work and all operations of Subcontractor on this construction project, all the obligations and responsibilities that Contractor by the General Contract assumes toward Owner. The Subcontractor agrees that it will so perform this Subcontract as not to violate any terms, covenants or conditions of the General Contract. The relationships of the Subcontractor hereunder toward Contractor shall be the same as that of Contractor toward the Owner under the General Contract, and the relationship of the Contractor hereunder to the Subcontractor shall be the same as that of the Owner toward the Contractor under the General Contract.
 

 On September 29, 1978, Darrell Ross, an employee of the railroad, was injured when he fell from a gondola car while loading ties in connection with the removal of the railroad branch line. Ross filed a personal injury suit against Gibbons as trustee of the railroad. As a result of a settlement agreement, a judgment was entered against Gibbons in the amount of $200,000. In addition, Gibbons incurred an additional $10,-144.50 in medical expenses paid to Ross prior to the settlement, investigation expenses, and attorney fees.
 

 Gibbons filed suit, based on diversity jurisdiction, against Graves alleging that he was entitled to express contractual indemnity for the amount of the settlement judgment and related expenses. Gibbons argued that the subcontract between Graves and Early incorporated all of the terms of the prime contract between Early and Gibbons and that section 10 of the prime contract provided express contractual indemnity. The district court agreed and granted Gibbons’ motion for summary judgment. The district court awarded Gibbons $200,000 as the amount of the settlement judgment and $10,144.50 in related litigation expenses.
 

 Indemnity contracts are generally subject to the rules governing the construction and interpretation of contracts.
 
 Northern National Gas Co. v. Roth Packing Co.,
 
 323 F.2d 922, 926 (8th Cir.1963) (applying Iowa law).
 
 [2]
 
 “It is well settled in this circuit that disputes involving the interpretation of unambiguous contracts are appropriate cases for the entry of summary judgment.”
 
 Trnka v. Elanco Products Co.,
 
 709 F.2d 1223, 1227 (8th Cir.1983). In this case, the district court found that the language of the subcontract and prime contract was unambiguous in providing contractual indemnity.
 

 The district court first found that the language in sections 1 and 6 of the subcontract “clearly incorporate^] the terms of the [prime contract] into the subcontract between Graves and Early.”
 
 Gibbons v. Graves Construction Co.,
 
 No. C 82-4002, slip op. at 3 (N.D.Iowa Jan. 27, 1983). The court noted that section 1 of the subcontract provided that the work would be
 
 *756
 
 performed “per contract” between Early and Gibbons and that section 6 of the subcontract provided that Graves agreed to be bound by “all the obligations and responsibilities” that Early had assumed toward Gibbons.
 
 Id.
 
 Further, section 6 provided that “the provisions of the [prime contract] ... are hereby incorporated into this subcontract as fully as if completely rewritten herein.”
 
 Id.
 
 On appeal Graves argues that the district court took the above-quoted language out of context and that when the subcontract is read as a whole the extent of incorporation of the terms of the prime contract is ambiguous. Apparently, Graves did not pursue this issue in the district court because the district court stated that “[t]his point [extent of incorporation] has not been disputed by the parties.”
 
 Id.
 
 However, assuming Graves raised the issue below, we agree with the district court that the subcontract clearly incorporated the terms of the prime contract.
 

 [2] The district court next found that the language of section 10 of the Early contract clearly provided indemnity to the railroad for injuries sustained by railroad employees while performing work in connection with the contract. We agree. Section 10 provided that Early agreed to indemnify the railroad against “any and all liability ... for injury to ... persons resulting in whole or in part, directly or indirectly, from or in connection with the performance of this contract....” The Tenth Circuit has held that similar language in an agreement indemnifying a railroad covered injuries sustained by railroad employees.
 
 Southern Pacific Transportation Co. v. Nielsen,
 
 448 F.2d 121, 124-25 (10th Cir.1971).
 
 [3]
 

 See also Seymour v. Chicago and Northwest R.R. Co.,
 
 255 Iowa 780, 124 N.W.2d 157, 161 (1963) (“The words ‘in connection with’ are broad, and have been so construed by the courts.”) Section 10 also specifically indemnifies for injuries resulting from or in connection with the “presence of contractor ... subcontractors and employees upon the premises of the railroad in connection with the performance of this contract.” The injury to Ross is covered under both provisions of section 10 as it was in connection with the performance of the contract and in connection with the presence of the subcontractor on the premises of the railroad.
 

 Graves argues that the district court erred in excluding the deposition testimony of Graves’ president that at the time he signed the subcontract he did not understand the extent of the indemnity provision. Under Iowa law, parol evidence is admissible as an aid to interpreting contract language.
 
 [4]
 

 Freese Leasing, Inc. v. Union Trust & Savings Bank,
 
 253 N.W.2d 921, 924-25 (Iowa 1977). However, as the district court found, Graves’ offer of extrinsic evidence did not pertain to the meaning of the words of section 10, but “pertain[ed] to things Graves may not have thought of when the agreement was made....”
 
 Gibbons v. Graves Construction Co., supra,
 
 slip op. at 5. Therefore, the district court properly excluded the evidence. As was recently stated by the Iowa Supreme Court, “[t]he offer of extrinsic evidence was not an attempt to interpret the language actually used by the parties; it was an attempt to vary or alter language in a written agreement, and as such was inadmissible.”
 
 Bankers Trust Co. v. Woltz,
 
 326 N.W.2d 274, 276 (Iowa 1982).
 

 Graves also challenges the district court’s award of $5,287.28 as medical expenses Gibbons paid Ross before the settlement. The district court did not err in concluding that
 
 Ferris v. Anderson,
 
 255 N.W.2d 135, 137 (Iowa 1977), which involved advance payment under an insurance policy, was inapplicable. The district court found it impossible to determine
 
 *757
 
 whether the advance payments for medical expenses were intended to be included as part of the judgment entered pursuant to the settlement agreement, but assumed that the judgment was to cover damages other than the medical expenses. The district court did not err in this respect, nor in its award of the investigation expenses, court reporter fees and attorneys’ fees.
 

 The judgment of the district court is affirmed.
 

 [1]
 

 . The Honorable Ronald E. O’Brien, United States District Judge for the Northern District of Iowa.
 

 [2]
 

 . There is no dispute that Iowa substantive law applies.
 

 [3]
 

 . The language of the agreement provided that appellant would indemnify the railroad “against all ... liability ... of whatsoever character, including injuries to ... any and all persons ... arising out of or in connection with the work to be performed.... ”
 
 Southern Pac. Transp. Co. v. Nielsen,
 
 448 F.2d 121, 124 (10th Cir.1971). (Emphasis omitted.)
 

 [4]
 

 . Under Iowa law, the parol evidence rule is a rule of substantive law.
 
 Salsbury v. Northwestern Bell Telephone Co.,
 
 221 N.W.2d 609, 611 (Iowa 1974).