THE SWISS COLONY, INC., Plaintiff,

v.

PROMOTION FULFILLMENT CORP.
and Swabasa, L.C., Defendants.

Nos. CIV. 3–96–CV–10091, 3–96–CV–10148.

United States District Court,
S.D. Iowa,
Davenport Division.

July 13, 1998.

Richard William Strawbridge, Clausen, Miller, Gorman, Caffrey & Witous, P.C., Chicago, IA, John Stonebraker, McDonald, Stonebraker & Cepican, P.C., Davenport, IA, for Plaintiff.

Sean W. McPartland, Lynch, Dallas, Smith & Harman, Cedar Rapids, IA, for Defendants.

ORDER

LONGSTAFF, District Judge.

The Court has before it defendants' motion for summary judgment, filed June 1, 1998. Plaintiff resisted the motion June 12, 1998. Defendants filed a Reply on June 30, 1998. The motion is now fully submitted. The Court notes that all parties have requested oral argument on this matter, but finds such argument unnecessary.

I. BACKGROUND

The following facts either are not in dispute or are viewed in a light most favorable to plaintiff. Defendant SWABASA, L.C. ("Swabasa") is the owner of a large warehouse facility in Comanche, Iowa. Pursuant to a Lease Agreement dated June 20, 1994, Swabasa leased the entire facility to defendant Promotion Fulfillment Corporation ("PFC")("Swabasa Lease"). On April 14, 1994, PFC entered into a sublease of a por-

tion of the facility with plaintiff ("PFC/Swiss Colony Lease").[1] On April 14, 1995, a fire originated in a portion of the warehouse occupied by PFC and spread to the adjacent area occupied by plaintiff. Plaintiff seeks damages from defendants for damage to plaintiff's property arising from the fire.

This action originally involved several plaintiffs who asserted claims as bailors of property. All claims other than Swiss Colony's have been settled.

In its original complaint, plaintiff also asserted claims as a bailor of property. However, as plaintiff and defendants agree, their relationship is actually that of landlord/tenant. Therefore, in its Second Amended Complaint ("Complaint"), plaintiff alleges several acts of negligence on the part of the defendants as owner and landlord of the warehouse.[2] Defendants have each moved for summary judgment on different theories: PFC claims that a waiver of subrogation clause in the PFC/Swiss Colony Lease releases it from any liability to plaintiff; Swabasa claims that since it had leased the premises to PFC, it owed no duty to plaintiff.

## II. APPLICABLE LAW AND DISCUSSION

### A. Summary Judgment Standard

Summary judgment is properly granted when the record, viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Walsh v. United States*, 31 F.3d 696, 698 (8th Cir. 1994). The moving party must establish its right to judgment with such clarity that there is no room for controversy. *Jewson v. Mayo Clinic*, 691 F.2d 405, 408 (8th Cir. 1982). "[T]he mere existence of *some* alleged factual dispute between the parties will

not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue is "genuine," if the evidence is sufficient to persuade a reasonable jury to return a verdict for the nonmoving party. *Id.* at 248, 106 S.Ct. 2505. "As to materiality, the substantive law will identify which facts are material.... Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

### B. Whether Summary Judgment is Appropriate in Present Case

#### 1. PFC's Motion

PFC essentially relies on one subparagraph of the PFC/Swiss Colony Lease as the basis for its motion for summary judgement. The relevant paragraph reads as follows:

> 9. PROPERTY INSURANCE. (a) Tenant will not do or omit the doing of any act which would invalidate any insurance, or increase the insurance rates in force on the premises. *See Exhibit A attached.*
>
> (b) To the extent of all insurance collectible for damage to property, and to the extent permitted by their respective policies of fire and extended coverage insurance, each party hereby waives rights of subrogation against the other, regardless of fault.

The italicized language was typed onto a standard Iowa State Bar Association business lease form. It is PFC's position that paragraph 9(b) contains an unambiguous waiver of plaintiff's right to seek damages from PFC resulting from the fire.

Plaintiff responds that paragraph 9(b) cannot be properly interpreted without examining the Exhibit A referenced in the preceding subparagraph.[3] In particular, plaintiff

---

1. The Court notes that the Swabasa Lease is dated more than two months after the PFC/Swiss Colony Lease. However, since neither party has raised this apparent discrepancy, the Court will rule on the substantive issues of defendants' motion as if PFC is the proper party to the April 14 PFC/Swiss Colony Lease.

2. In a separate Order entered today, the Court allows the filing of plaintiff's Second Amended Complaint. The Court will consider this motion as if it relates to Count I of said Complaint; the

issues discussed herein are inapplicable to Count II of the Complaint.

3. Although the reference to Exhibit A follows sub-paragraph 9(a), the Court assumes for the purposes of this motion that the reference was placed as it was due to the lay-out of the form rather than a true desire to incorporate terms pertaining to sub-paragraph 9(a). In fact, Paragraph 5 of the Exhibit does not relate to anything discussed in sub-paragraph 9(a) of the form.

refers to paragraph 5 of the Exhibit, which reads as follows:

> 5. *INSURANCE.* Landlord's fire and casualty insurance policies shall provide either that tenant is an additional insured thereunder or that landlord and said insurer waive subrogation rights against tenant to the extent that the insurance proceeds cover any loss to the premises and/or landlord resulting from tenant's occupancy during the term.

Plaintiff asserts that this language is meant as a replacement for paragraph 9(b), and, therefore, nullifies the mutual waiver of subrogation contained therein.

The Exhibit A attached to the standard lease form originated from an earlier agreement between PFC and plaintiff, an Offer to Lease dated April 5, 1994, signed by both parties. Plaintiff's vice president of human resources and general counsel drafted the Offer to Lease and requested that when the parties executed the standard lease form, parts of the Offer were to be incorporated in the final lease. Thus, paragraph 5 of Exhibit A is identical to paragraph 4 of the Offer to Lease. Both parties agree that the April 14 Lease is the final expression of their agreement.

The standard form contains several apparently random references to Exhibit A. None of the references indicate a specific paragraph of the Exhibit, nor do any of them follow from stricken language. The form has several blank spaces which are not followed by any reference to Exhibit A. Finally, a Paragraph 17 is typed onto the face of the form as follows: "17. OTHER TERMS. See Exhibit A attached."

The dispute at hand involves the different claims of the parties as to the significance of paragraph 5 of the Exhibit. Plaintiff contends that it supplants and replaces paragraph 9(b), thus eliminating the waiver of its right of subrogation; PFC argues that paragraph 5 merely gives it the option of either naming Swiss Colony as a beneficiary of its insurance policies or waiving any right of subrogation in the event of harm. PFC also contends that paragraph 5 does not affect plaintiff's waiver contained in paragraph 9(b). The issue is one of contract interpretation.

In a diversity case, a federal court looks to state law in determining issues of contract law. *See Gibbons v. Graves Construction Co. Inc.*, 727 F.2d 753, 755 (8th Cir.1984); *see also Prudential Ins. Co. v. Rand & Reed Powers P'ship*, 972 F.Supp. 1194 (N.D.Iowa 1997), *aff'd*, 141 F.3d 834 (8th Cir.1998). "A lease is both a contract and a conveyance. Therefore, [Iowa courts] look to ordinary contract principles when construing a lease." *Dickson v. Hubbell Realty Co.*, 567 N.W.2d 427, 430 (Iowa 1997).

Exculpatory clauses, such as those contained in paragraph 9(b) and paragraph 5 waiving subrogation rights, are enforceable in Iowa. *See Huber v. Hovey*, 501 N.W.2d 53, 55 (Iowa 1993); *Advance Elevator Co., Inc. v. Four State Supply Co.*, 572 N.W.2d 186, 188 (Iowa Ct.App.1997). Thus, the only question which remains is whether, pursuant to paragraph 9(b), plaintiff has waived its right to collect damages from PFC.

"[I]n the construction of written contracts, the cardinal principal is that the intent of the parties must control; and except in cases of ambiguity, this is determined by what the contract itself says." *Dickson*, 567 N.W.2d at 430 (citing Iowa R.App. P. 14(f)(14)). "Ambiguity exists when, after application of pertinent rules of interpretation to the face of the instrument, a genuine uncertainty exists concerning which of two reasonable constructions is proper. The test for ambiguity is an objective one: 'Is the language fairly susceptible to two interpretations?'" *Iowa Fuel & Minerals, Inc. v. Iowa State Board of Regents*, 471 N.W.2d 859, 863 (Iowa 1991) (citations omitted).

If contract language is found to be ambiguous, the ambiguity is to be construed strictly against the drafter of the language. *Id.* Plaintiff and defendants each claim that the other is the drafter of the terms under scrutiny here. However, where both parties to the agreement are represented by competent legal counsel, this doctrine of *contra proferentem* (against the party who proffers a thing) is inapplicable. *Kinney v. Capitol-Strauss, Inc.*, 207 N.W.2d 574, 577 (Iowa 1973). *See also Terra Int'l, Inc. v. Mississippi Chem. Corp.*, 119 F.3d 688, 692 (8th Cir.1997), *cert. denied*, —— U.S. ——, 118

S.Ct. 629, 139 L.Ed.2d 609 (U.S. Dec. 15, 1997). In their briefs on this motion, Plaintiff and PFC make numerous references to negotiations which occurred between their respective attorneys with respect to the PFC/Swiss Colony Lease. Therefore, the Court declines to interpret paragraph 9(b), paragraph 5 or their integration in a light which is unfavorable to either party.

Interpretation of the contract, as distinguished from construction, involves determining the meaning of the words themselves. *Fashion Fabrics of Iowa, Inc. v. Retail Investors Corp.*, 266 N.W.2d 22, 25 (Iowa 1978). As a general rule, in interpreting a contract, a court may properly consider extrinsic evidence, including the situation of the parties and any antecedent negotiations. *Id.* Both PFC and plaintiff make extensive references to depositions which clarify their situation and the negotiations leading up to the execution of the final PFC/Swiss Colony Lease. Nevertheless, this evidence should only be considered if it is keeping with another basic rule of interpretation: "Because a contract is to be interpreted as a whole, it is assumed in the first instance that no part of it is superfluous; an interpretation which gives a reasonable, lawful, and effective meaning to all terms is preferred to an interpretation which leaves a part unreasonable ... or of no effect." *Iowa Fuel & Minerals*, 471 N.W.2d at 863 (citations omitted). Furthermore, if the agreement is clear and unambiguous on its face, extrinsic evidence should not be considered. *Thornton v. Hubill, Inc.*, 571 N.W.2d 30 (Iowa Ct.App.1997).

■ Plaintiff's proffered interpretation of the lease form with Exhibit A attached would have the Court give no effect to paragraph 9(b) of the form. It is much more logical, and in keeping with the above-quoted rule set forth in *Iowa Fuel*, to read paragraph 9(b) and paragraph 5 of the Exhibit as PFC contends: paragraph 5 was included as a protection to plaintiff. It is entirely feasible to give effect to both paragraphs together and find no conflict or ambiguity. Indeed, plaintiff's argument actually attempts to create an ambiguity where none exists. Paragraph 5 contains nothing which contradicts paragraph 9(b); it simply makes clear that PFC must either name Swiss Colony as a beneficiary of its insurance policies or waive all rights of subrogation against Swiss Colony. PFC is not attempting to assert any right of subrogation here; only plaintiff is attempting to avail itself of that right, and paragraph 5 contains no language which returns that right to plaintiff in contradiction with paragraph 9(b).

■ Plaintiff seeks to have this Court consider extrinsic evidence which it argues would nullify the provisions of paragraph 9(b). Yet this is exactly the situation where such evidence must not be considered: "[an] offer of extrinsic evidence [as] an attempt to vary or alter language in a written agreement [is] inadmissable." *Bankers Trust Co. v. Woltz*, 326 N.W.2d 274, 276 (Iowa 1982). *See also Hamilton v. Wosepka*, 261 Iowa 299, 154 N.W.2d 164, 169 (Iowa 1967): "The admission of evidence of extrinsic facts is not for the purpose of changing the writing, but to secure light by which to measure its actual significance. Such evidence is adducible only for the purpose of interpreting the writing-not for the purpose of modifying or enlarging *or curtailing* its terms, but to aid in determining the meaning of what has been said." (Emphasis added) (citation omitted). Although evidence may be offered to show what the parties meant by what is written, it may not be offered to show that they meant to say something different from what is written. *Bankers Trust*, 326 N.W.2d at 276. "It goes without saying that [extrinsic evidence] cannot be used to vary or alter language in the written agreement." *Uhl v. City of Sioux City*, 490 N.W.2d 69, 73 (Iowa Ct.App. 1992) (citing *Bankers Trust* ).

In applying the cardinal rule that the parties' intent must control, it is clear that both parties' intentions can be honored only if paragraph 9(b) and paragraph 5 are read together. As evidenced by both provisions, plaintiff (and PFC) clearly intended for PFC to waive its right to subrogation or, in the alternative, to name Swiss Colony as a beneficiary under PFC's liability policies. Likewise, PFC (and plaintiff) clearly intended plaintiff to waive its right to subrogation, as set forth in paragraph 9(b). Neither the face of the form nor Exhibit A contains any language suggesting that the parties intended to strike plaintiff's waiver of subrogation rights.

Any facts which may be disputed surrounding the execution of the PFC/Swiss Colony Lease are inadmissable under *Bankers Trust* and *Hamilton;* thus, the standard for summary judgment has been satisfied. *See, e.g., Gibbons,* 727 F.2d 753. This Court concludes that all of the rules of contract interpretation and construction support PFC's position and that paragraph 9(b) remains in effect as written. To hold otherwise would require the contravention of several well-settled principles of Iowa contract law.

Plaintiff makes one further attempt to argue that the terms of paragraph 9(b) should not be enforced: it claims that PFC is in breach of the terms of paragraph 5 of the Exhibit by not providing evidence of an insurance policy wherein plaintiff is named as a beneficiary or, in the alternative, providing written evidence that PFC has waived any subrogation rights against Swiss Colony. Yet this waiver appears in paragraph 9(b) itself: "[E]ach party *hereby waives* rights of subrogation against the other ...." (Emphasis added). As stated above, the Court finds that the provisions of paragraph 9(b) are enforceable. Furthermore, as pointed out above, PFC is not attempting to raise any subrogation right here. The Court finds no merit in plaintiff's final argument.

### 2. Swabasa's motion

Plaintiff also seeks damages from Swabasa as the owner of the warehouse facility, alleging that the premises did not have proper fire walls and fire doors and that the building lacked a sprinkler or alarm system. Plaintiff claims that this resulted in a potentially dangerous condition which led to unreasonable risk of harm. Swabasa alleges that because it had subleased the entire premises to PFC, Swabasa owed no duty of care to plaintiff.

The Swabasa Lease places responsibility for care and maintenance of the facility on PFC as tenant. Paragraph 5 of the Lease reads as follows:

5. CARE AND MAINTENANCE. (a) Tenant takes the premises as is, except as herein provided.

(b) Tenant shall keep the following in good repair: (STRIKE THOSE NOT APPLICABLE) (roof) (exterior walls) (foundation) (sewer) (plumbing) (heating) (wiring) (air conditioning) (plate glass) (windows and window glass) (parking area) (driveways) (sidewalks) (exterior decorating) (interior decorating) except when the same are occasioned by the misuse or negligence of Tenant, its agents, employees or invitees. Landlord shall not be liable for failure to make any repairs or replacements unless Landlord fails to do so within a reasonable time after written notice from Tenant.[4]

Normally, the owner of leased premises owes no duty to third parties if the owner has relinquished control and care of the premises to its tenant. *See Allison by Fox v. Page,* 545 N.W.2d 281, 283 (Iowa 1996). However, plaintiff argues that if a defect existed at the time the lease was entered into, the owner remains liable for damages which occur as a result of this defect.

The usual rule favors Swabasa: a lease is considered to be the equivalent of a sale of the property for the term of the lease. *See* Restatement (Second) of Torts § 356 cmt. a (1965). Thus, "a lessor of land is not liable to his lessee or to others on the land for physical harm caused by any dangerous condition, whether natural or artificial, which existed when the lessee took possession." *Id.* at § 356. Nevertheless, support for plaintiff's position appears in *Barrett v. Stoneburg,* 238 Iowa 1068, 29 N.W.2d 420 (Iowa 1947). Barrett was the owner of a vehicle parked next to a building which collapsed. The building was owned by defendant Stoneburg, but had been leased to a Mr. Larsen. The lease provided that tenant Larsen was responsible for repairs to the building. Stoneburg argued that because Larsen was responsible for repairs, and because Stoneburg was not in possession or control of the building, that he was not responsible for damage caused to the plaintiff's car as a result of the building's collapse. The court found that the duty to

---

4. The Court notes the incongruity of this language, but finds it irrelevant for the purposes of ruling on this motion.

maintain a building such that it will not collapse is absolute and cannot be passed to others. If, at the time the lease in entered into, property is in such a state of defectiveness that it constitutes a "nuisance," "the tenant's covenant to make repairs will not relieve the landlord from liability." *Id.* at 423 (citing *Updegraff v. Ottumwa,* 210 Iowa 382, 226 N.W. 928 (Iowa 1929)). The court went on to state that whether a building constitutes a nuisance is a proper question for a jury, as is the question of whether the owner of the building remains liable therefor.

There are thus several factual questions which must be determined, making this issue one which cannot be decided as a matter of summary judgment. If the facts reveal that the warehouse lacked sufficient fire safeguards to such an extent that it constituted a nuisance, it is possible that Swabasa could be liable for damages incurred as a result of that nuisance under *Barrett* and *Updegraff.*

## III. CONCLUSION

For the reasons outlined above, defendant PFC's motion for summary judgment is GRANTED. Defendant PFC is hereby DISMISSED from Count I of the Second Amended Complaint.

Defendant Swabasa's motion for summary judgment is DENIED.

Furthermore, because the Court's ruling on defendant PFC's motion renders Plaintiff's Motion for Partial Summary Judgment on (PFC's) Fifth Affirmative Defense (filed June 2, 1998) moot, said Motion is also DENIED.

IT IS SO ORDERED.